STATE OF MINNESOTA *ex rel.* R. M. Probstfield *vs.* JAMES H. SHARP and others.

July 22, 1880.

**Quo Warranto—Burden of Proof—Misconduct of Relator.**—A proceeding by information in the nature of *quo warranto*, under Gen. St. c. 63, § 1, is not the action provided for in Gen. St. 1878, c. 79. In the absence of legislation, or any controlling consideration to the contrary, such proceeding is governed, as respects procedure, by common-law rules. The *onus probandi* is, therefore, upon the respondent. It is for the attorney general to determine whether the public good requires him to institute and conduct such proceeding. If he deems it best to proceed, notwith-withstanding any conduct of the relator, at whose instance he moves, it would be a very extraordinary case (if any) in which his determination would be overruled.

**Independent School-Districts may embrace one or more Townships.**—Section 3, article 11, of the constitution of this state, authorizes the legislature to pass laws for the organization, for municipal or other town purposes, of one or more townships, whether congressional (*i. e.*, full) or fractional, into a single town. Gen. St. 1878, c. 36, § 94, which enacts that "any city, town, village, township, or school-district, now or hereafter organized, may be organized into and established as an independent school-district," authorizes the formation of a town consisting of any number of townships, congressional or fractional, into a single independent school-district. It is not controlled by section 17 of the same chapter, which restricts the area of the school-districts therein referred to to 36 square miles.

*Quo warranto,* the respondents being the directors of the "Moorhead Independent School-District," composed of townships 137, 138, 139, 140 and 141, of range 48, and fractional townships 137, 138, 139, 140 and 141, of range 49, all in Clay county; and the purpose of this proceeding being to try the validity of the proceedings by which these ten townships were formed into a single independent school-district, and organized as such. The case is stated in the opinion.

*Chas. M. Start,* Attorney General, *J. M. Shaw* and *J. W. Griffin,* for the State.

*Davis, O'Brien & Wilson,* for respondents.

BERRY, J. This is a proceeding by information, in the nature of *quo warranto*, under Gen. St. 1878, *c.* 63, § 1. It is not the action provided for in chapter 79 of said statutes, and the provisions of that chapter are not *per se* applicable to it. In the absence of any legislation or controlling considerations to the contrary, it follows that, as respects procedure, it is governed by common-law rules. The rule that the *onus probandi* is upon the respondent, (High on Ex. Rem. §§ 629, 712, and cases cited; 2 Dillon Mun. Cor. §§ 717, 722; 5 Wait's Practice, 615; *People* v. *Pease*, 30 Barb. 588, 591,) therefore, applies here, and the defendants must prove the existence of the corporate franchise which they are alleged to have usurped, and their title to the offices, with the wrongful claim or usurpation of which they are charged.

At the start it is objected by the respondents that the relator, Probstfield, has actively acquiesced in the exercise of the franchise spoken of, and the respondents' assumption of title to the offices in question, and in their discharge of the alleged powers and duties of the same, and that he is, therefore, estopped to institute or conduct this proceeding. The answer to this is that it is the attorney general who has instituted and who is conducting the proceeding, as the law officer of the state—the representative, not of the relator, but of the government. It is for him to determine whether the public good requires him to proceed in the matter. If he deems it best to proceed, notwithstanding any conduct of the party at whose instance he moves, if there is any case in which his determination would be overruled, it must certainly be a very extraordinary one, and not such a case as this.

This brings us to the merits. We are first called upon to interpret section 3, article 11, of the constitution of this state, which reads: "Laws may be passed providing for the organization, for municipal and other town purposes, of any congressional or fractional townships in the several counties in the state: *provided*, that when a township is divided by

county lines, or does not contain one hundred inhabitants, it may be attached to one or more adjoining townships or parts of townships, for the purposes aforesaid." This authority to pass laws for the organization of congressional or fractional townships, "for municipal and other town purposes," is an authority to pass laws for the organization of the townships named, for the general purposes of town government, the word "town" being used to denote what is quite commonly spoken of as the New England town; that is, as a portion of the state, bounded by geographical lines, to which, to a greater or less extent, the power of local self-government is committed. The legislature is authorized to pass laws providing for such organization "of *any* congressional or fractional *townships*." We emphasize the word "any," and the plural "townships," for we take them to be significant. The authority is not limited to the organization of a single congressional or fractional township. It is an authority for the organization of *any* townships, (*i. e.*, one or more,) whether congressional or fractional; but it is not an authority to divide a congressional or fractional township. It was thought, however, that such division would, for obvious reasons, be desirable when a township was divided by county lines, or contained a small population, less than 100 inhabitants. These cases are met by the proviso. From this interpretation of the section quoted from the constitution, it follows that the legislature possessed authority to pass Sp. Laws 1879, *c.* 236, by which twelve townships, congressional or fractional, are declared to be and to constitute the town of Moorhead, and that the chapter is not unconstitutional.

In April, 1879, two of these twelve townships were set off, leaving the town of Moorhead to consist of the remaining ten. The second important question in the case is whether the statutes permit these ten townships to be formed into one independent school-district? Gen. St. 1878, *c.* 36, § 94, enacts that "any city, town, village, township, or school-district,

now or hereafter organized, may be organized into and established as an independent school-district: * * * *provided, first,* that this title shall not apply to any township or school-district containing less than five hundred inhabitants, unless said school-district consists, in whole or in part, of an incorporated city, town or village: *provided, second,* that the provisions of this chapter shall not apply to any city, town or village, or any part thereof, which now has any special law regulating its schools." This section, standing alone, clearly authorizes the formation of a town consisting of any number of townships, congressional or fractional, into a single independent school-district. It is, however, contended, in behalf of the state and the relator, that it is controlled by section 17 of the same chapter, (Gen. St. 1878, *c.* 36.) It will be noticed that this chapter is divided into subchapters, which are noted both in the original act of 1877, and also in the General Statutes of 1878. Section 17 is found in subchapter 1, some of the provisions of which appear to be applicable to all of the three statutory classes of school-districts, to wit, common, independent and special. Other provisions are applicable to common, but not to independent, districts. As to other provisions, it is not really apparent how far their applicability extends. Section 94 is found in subchapter 7. This subchapter appears to be confined to independent school-districts. Its aim seems to have been to make all provisions in reference to such districts which occurred to the legislature to be necessary for their organization and government. Yet, for the purpose of covering any case overlooked, section 115 enacts that, "upon and after organization as herein" (*i. e.,* in subchapter 7) "provided, any district so organizing, or heretofore so organized," (*i. e.,* as an independent school-district,) "shall be governed by the provisions of this chapter," (*i. e.,* subchapter 7,) "and by the general school law," (*i. e.,* the school laws other than subchapter 7,) "not inconsistent with the special provisions of this chapter," (*i. e.,*

subchapter 7.) It will be observed that this section does not touch the matter of organization. It relates wholly to the *government* of independent districts *after* organization. The organization of districts under subchapter 1 is the work of the county commissioners. The organization of inde-pendent districts, under subchapter 7, is the work of the qualified electors of the proposed district. As respects the matter of organization, subchapter 7 makes no reference to any other portion of the school law. If it had been the intention that, as respects organization, subchapter 7 should, in every way, be controlled by other portions of the school law, it is reasonable to suppose that this intention would have been expressed. No such intention can be gathered from any provision of such subchapter, while the fact that as respects the matter of government after organization, reference is made to the general school law, is morally con-clusive that, as respects organization, it was not the inten-tion of the legislature to subject independent districts to the control of what is styled the general school law, but to make them, as their name implies, wholly independent thereof, and subject only to the provisions of subchapter 7.

If we are right, it follows that section 17, subchapter 1, which enacts that "any school-district hereafter organized or altered may contain the entire township, * * * or a tract of land six miles square in different townships," has no application to the organization of independent school-dis-tricts. This is the statutory provision relied upon by the state, and which is claimed to restrict the area of school-dis-tricts organized after its passage to 36 sections of land. In our opinion it does not control section 94. Under that sec-tion, a town consisting of several townships, congressional and fractional, may lawfully be formed into a single independ-ent school-district. So far as the question of authority is concerned, it was, therefore, lawful and competent for the town of Moorhead, consisting, as it did, of ten townships,

partly congressional or full, and partly fractional, (as it is claimed,) to be formed into an independent school-district, by proceeding as in subchapter 7 provided. As to the notice of the meeting of the qualified electors, to decide upon the question of organizing the district, we are of opinion, upon the law and evidence, that it was sufficient. The matter of notice is governed by section 95, which requires the notices to "be posted in three of the most public places in the contemplated district." Gen. St. 1878, c. 10, § 113, does not apply to such a case.

These are all the matters which we feel called upon to determine, and the result is that the respondents are entitled to judgment, which will be entered accordingly.