STATE OF MINNESOTA *ex rel.* GATES A. JOHNSON *vs.* EDWARD C. STARKEY.

Argued April 27, 1892.   Decided May 11, 1892.

**Municipal Ordinance No. 340, of St. Paul, Valid.**—The ordinance of the city of St. Paul providing for the appointment of a building inspector, and prescribing his qualifications, is valid.

**Building Inspector—Term of Office.**—The official term of the incumbent, who was elected in January, 1890, was for the term of two years, and until his successor should be elected and qualified.

**Same—Must be a Practical Architect and Sanitary Engineer.**—Under the provisions of that ordinance a person who is not a practical architect and sanitary engineer, as required thereby, is not eligible to the office, and such requirement is mandatory.

This is an original proceeding brought January 7, 1892, in this court by the Attorney General upon the relation of Gates A. Johnson.

The information charged that Edward C. Starkey, without right or legal warrant, intruded into and unlawfully held the office of Inspector of Buildings in the City of St. Paul; that he was ineligible, disqualified, and without experience in or knowledge of the profession of architecture or sanitary engineering; that he had not been duly elected, and that the term of office of Johnson, the prior incumbent, had not expired.   The writ issued, requiring Starkey to show *quo warranto* he held and exercised that office.   He answered, and the court appointed a Referee, who took the evidence offered by the parties and reported it to the court.

*Moses E. Clapp,* Atty. Gen., and *Davis, Kellogg & Severance,* for relator.

Sp. Laws 1887, ch. 343, § 46, forbids the Common Council to shorten the term of the inspector of buildings during the term for which he is elected. *Stadler* v. *City of Detroit,* 13 Mich. 346; *Hawkins* v. *Watkins,* 34 Minn. 554.

This Act embraces but one subject, and that is sufficiently expressed in its title. *Johnson* v. *Harrison,* 47 Minn. 575.

The ordinance provides that the person elected to this position shall be a practical architect and sanitary engineer. The evidence taken shows that Mr. Starkey is neither. *State ex rel. Attorney General* v. *Covington,* 29 Ohio St. 102; *People* v. *Platt,* 117 N. Y. 159.

*D. W. Lawler* and *J. C. Michael,* for respondent.

Sp. Laws 1887, ch. 343, has no application to this case. If it does apply, section forty-six (46) is void, because it attempts to confer upon the Common Council power to enact irrepealable legislation, and because it is in violation of the Constitution. Article 4, § 27. *Winona & St. P. R. Co.* v. *Waldron,* 11 Minn. 515, (Gil. 392;) *State* v. *Kinsella,* 14 Minn. 524, (Gil. 395;) *Mississippi & Rum River Boom Co.* v. *Prince,* 34 Minn. 79.

The Council, in electing the respondent, exercised the power given them by the charter, and were bound by no restrictions or qualifications contained in any ordinance made by themselves. There is nothing in the language of the charter requiring the Building Inspector to be an architect or sanitary engineer. The evidence as to Mr. Starkey's qualifications we regard as having no place in the case.

VANDERBURGH, J. The charter of the city of St. Paul, as it stood in 1883, gave the common council the control and regulation of the construction of buildings within the city, and the authority to prohibit the erection and maintenance of insecure or unsafe buildings, and to provide for the regulation or summary abatement of any work or building which should be detrimental to the safety, health, or security of the city, and also authorized the council to provide for the

appointment of a building inspector, with such duties as the council might prescribe. In June, 1883, the council passed an ordinance (No. 340) for the inspection and control of buildings, and providing for the election of a building inspector, who was thereby required to be "a practical architect and sanitary engineer." The first incumbent under that ordinance held the office until the first Tuesday in January, 1884, when, in accordance with its provisions, a successor was to be elected with like qualifications, whose term of office was two years, and until his successor should be elected and qualified.

At the meeting in January, 1884, the relator, as we assume, was elected building inspector, and his term expired the first meeting in January, 1886, when he was again elected. At the same meeting the ordinance was amended, changing the term from two to four years. Subsequently, on the 29th day of January, 1886, he qualified and gave bonds "for the term of four years, and until his successor should be elected and qualified, under the provisions of ordinance No. 340 as amended." And thereafter, at the first meeting of the council in January, 1890, the council again amended the ordinance, reducing the term to two years, and on the same evening re-elected the relator for the term of two years, and subsequently, after the ordinance took effect, he qualified, and gave bonds in accordance with the terms of the ordinance as so amended.

1. The relator insists that the amendment last referred to was inoperative as to him, because (*a*) he was elected before the amended ordinance was signed and published, that is, before it took effect; and (*b*) also on the ground that, by virtue of Sp. Laws 1887, ch. 343, § 46, the council had no power to make the change. As respects the first ground of objection, it is sufficient to say that, assuming that the council were authorized to make the amendment in question, it so far superseded the old ordinance, and took effect as to the incumbent as well as his successor, and he subsequently qualified under it.

Sp. Laws 1887, ch. 343, is entitled: "An act to regulate and control the construction of buildings and structures, and the disposition of dangerous structures, within the limits of the city of St. Paul." This act contains elaborate provisions in respect to the erection of

buildings and structures within the city, and specific directions in reference to the character and stability of the materials to be used and the details of construction. Section forty-six, (46,) above referred to, is as follows:

"All ordinances and parts of ordinances of said city now in force, relating to the building limits, fire limits, and the inspection and survey of buildings, are hereby legalized, and shall remain in force until amended, or repealed by said city, and said city is hereby authorized and empowered to provide by ordinance such provisions, rules, and regulations, and penalties as shall carry out and enforce the provisions of this act: provided, however, that said council shall not pass any ordinance or adopt any resolution which shall in any manner contravene or make inoperative any of the provisions of this act, or the building ordinance (No. 340) three hundred and forty of said city, or of any other ordinance which may be passed hereafter providing for the inspection, regulation, and control of all buildings and structures within the limits of said city. And all officers elected or appointed under the provisions of said ordinances, or the ordinances or acts repealed, shall continue to hold office for the terms for which they were elected or appointed, and until their successors are elected or appointed, in accordance with this act, unless sooner removed."

This section is crude and obscure, and some of its provisions were inserted perhaps from abundance of caution; but, in so far as they are material to be considered in this case, it was thereby intended to legalize and preserve the essential provisions of the inspection laws and ordinances therein referred to then existing, including ordinance No. 340; and the express provision in the last clause, in respect to the continuance of official terms, relates only to persons holding office at the time of the passage of the act, and was intended to prevent such incumbents from being turned out of office before the expiration of their terms. It did not otherwise interfere with the legislative authority of the council, and we are of the opinion that the council might reduce the term of the building inspector from four to two years, as it did in January, 1890, and that the relator's term therefore regularly expired in January, 1892, and he is not entitled to

hold over, provided the respondent is legally qualified to hold the office under the provisions of ordinance No. 340.

2. If there is any doubt as to the power of the council, under the charter, to prescribe the special qualifications of the building inspector, as required by the ordinance, it is removed by the provisions of the act of 1887, referred to, which recognizes and validates that ordinance.

But the respondent contends that section forty-six (46) in question, which legalizes that ordinance, is void, because the subject-matter or provisions thereof, in so far as they relate to the building inspector or his qualifications, are foreign to, and not embraced within, the title of the act, which is above set forth.

We need not inquire whether all the provisions of ordinance No. 340 were made valid by the act, but we think the provisions of section forty-six, (46,) and of that ordinance, in so far as they relate to the inspection of buildings, and incidentally to the appointment and qualifications of the building inspector, are within the general scope and purpose of the act, which relates to the control and regulation of the construction of buildings, and are germane to the subject thereof as expressed in its title. The point is fully covered by former decisions of this court. *State* v. *Cassidy,* 22 Minn. 324; *City of St. Paul* v. *Colter,* 12 Minn. 50, 51, (Gil. 16;) *Johnson* v. *Harrison,* 47 Minn. 575, (50 N. W. Rep. 923, 924.)

3. It must be conceded, therefore, that the council were authorized to appoint a building inspector at the meeting in January, 1892, but the law required that he should be a "practical architect and sanitary engineer;" that is to say, it would be the duty of the council to select the officer from the class of persons having professional knowledge of architecture, and practical experience in superintending the construction of various kinds of buildings, including plumbing and drainage.

The whole subject is one of great public importance, as the legislature must have considered, involving the security and stability of buildings and structures in the city, and the health of the people. The statutory terms, "practical architect and sanitary engineer," evidently should not, in a case like this, be given too narrow or tech-

nical a construction, but should be considered in connection with the nature of the business and duties required of the officer, which relate, not so much to the styles of architecture, external finish, or matters of ornamentation, as a knowledge of the principles of architecture as practically applied in determining the strength, quality, and adaptation of materials, and the proper foundation for structures, and also in estimating and calculating the proportionate strength of walls, timbers, columns, and supports, and the strain or pressure to which they may be subjected, in conformity with the rules of the department. But the responsibility and duties are such as clearly require that the officer should be an expert, and the legislature evidently intended that he should be such. Within the designated class, the discretion of the council in the election of such officer cannot be reviewed; and, under any circumstances, the case ought to be very clear to authorize a *quo warranto* proceeding of this kind. The presumption is in favor of the validity and regularity of the appointment. But this is not conclusive, and, whether wisely or not, the legislative requirement appears to be mandatory.

There must, then, be some line of distinction between those who are entitled to be denominated "architects" and those who are not, and the latter are not eligible; and, if the person elected is claimed to be ineligible, the fact may be made the subject of judicial inquiry. The term "architect" has a well-defined meaning. Whether a person is or is not "a practical architect and sanitary engineer" is a matter susceptible of proof, and in this case must be determined upon the evidence as disclosed by the record. We have very carefully examined and considered all the evidence. It is unnecessary to refer to it in detail. Fairly construed, it admits of but one inference or conclusion; substantially, there is no dispute upon the merits of the case. While the respondent has had some experience in building for himself and others, and also in the construction of sewers, he admits that he has never practiced or followed the profession or business of an architect, and it is quite clear that he is not sufficiently skilled in the principles of architecture and sanitary plumbing, or in the application of the same in practice, to render him eligible to the office of building inspector under the ordinance. The city council

has therefore failed to make a valid appointment, and the relator is entitled to hold over until such appointment or election is made. There must be judgment of ouster against the respondent.

· (Opinion published 52 N. W. Rep. 24.)