STATE ex rel. W. B. DOUGLAS v. OLAF GYLSTROM.

August 1, 1899.

Nos. 11,723—(227).

### Inspector of Boilers—Eligibility—Quo Warranto—Evidence.

When the governor has made an appointment of inspector of boilers, and the eligibility of the appointee to hold the office under the provisions of G. S. 1894, § 481, is questioned by the attorney general in proper proceedings, the question of eligibility is not to be disposed of by weighing the evidence, and determining on which side it preponderates. If there is evidence which reasonably tends to support the conclusion of the governor when he was called upon to pass upon the qualifications of the appointee, his action cannot be set aside by the court.

### Same.

Held, testing the evidence by this rule, that the respondent, Gylstrom, was eligible to the office of inspector of boilers, to which office he was appointed by the governor in March, 1899.

Writ of quo warranto issued by the supreme court requiring respondent to show by what warrant he held and exercised the office of inspector of boilers for the fifth congressional district. Writ quashed.

*W. B. Douglas*, Attorney General, and *Weed Munro*, for relator.
*Harry Lund* and *Russell, Cray & Jamison*, for respondent.

COLLINS, J.

The question here is as to the eligibility of the respondent, Gylstrom, to hold the office of inspector of boilers for the fifth congressional district, to which office he was appointed by the governor March 28, 1899. Testimony as to his qualifications, under G. S. 1894, § 481, has been taken by a referee, and returned to this court. The section referred to reads as follows:

"No person shall be eligible to hold the office of inspector of boilers who has not had at least 10 years of actual experience in operating steam engines and steam boilers, *  *  *  or who is not  *  *  *  suitably qualified by experience in the construction of steam boilers so as to enable him to perform the duties of the office," etc.

It is averred in the information that Gylstrom has not had 10 years of actual experience in operating steam engines and steam boilers, and that he was not licensed to operate a steam boiler or steam machinery, under section 489, until January 5, 1899. It is not alleged that he is not suitably qualified by experience in the construction of boilers so as to enable him to perform the duties of his office.

The object of the statute prescribing the qualifications of appointees to the office of boiler inspector is apparent. The intention of the lawmakers was to secure a thorough inspection of steam boilers by men whose experience was practical, and had continued for such a period of time as would ordinarily well qualify and equip them with the knowledge required for a proper discharge of their duties. Not only are they required to have experience in operating boilers and engines, but the statute demands that they have had suitable experience in construction. Ten years' actual experience in operating, and such experience in construction work as will suitably qualify the appointee, are the tests. And the state, through its attorney general, having legally questioned respondent's eligibility to the office, the burden of proof is upon him to establish that he is eligible. State v. Sharp, 27 Minn. 38, 6 N. W. 408. But the question of his eligibility is not to be determined by this court by merely weighing the testimony, and then determining the matter upon a preponderance of evidence, as counsel for relator seem to assume, for that would be an encroachment upon the functions of the governor, who has made the appointment, and in so doing has passed upon the qualifications of Mr. Gylstrom for the place. If there is evidence which reasonably tends to support the conclusion reached by the executive when he was called upon to determine this very question of eligibility under the statute, this court cannot interfere, and say that, because the proofs preponderate against the respondent, the action of the governor must be set aside.

We have examined the evidence with great care, and, if the weight was to control, should be compelled to hold with the relator. But there is enough, measured by the rule which we must apply, to sustain the conclusion of the appointing power. A brief statement of the testimony upon this point is as follows: Gylstrom was 28 years of age when appointed to the office. When a boy, aged 14 or 15 years, he worked about steam boilers and engines in actual operation, generally assisting in firing. In 1886 he had exclusive charge of a small steam boiler and engine, and operated the same for six weeks. In the fall of that year he entered the employ of the Enterprise Company, at Minneapolis, as an apprentice, and remained in its service for 12 years continuously; that is, up to a short time before he was appointed inspector. His last employment was for another company in this same line of business, in the same city. The business of the Enterprise Company was buying, selling, repairing, and making steam engines, making and repairing steam boilers, and "setting up" "steam plants." His work for the company was quite general, and in all its branches. He had the experience which might be expected where a young man enters upon such employment, and continuously works for one concern for the period of 12 years. During those years his work involved the application of steam under all sorts of conditions, for nearly all of the business transacted had to do with the examination of the steam boilers and engines brought for repairs, the actual testing for the purpose of ascertaining what the defects were, and where located, and the construction or repairing, putting in place, starting up, and actual supervision of steam plants. During the years of service with the company, Gylstrom had practical experience with, approximately, 100 different plants which were either in the hands of his employer for repairs and again putting in use, or were constructed by it, and set in operation. The greater part of his time for at least 10 years before he left the employ of the Enterprise Company was taken up in handling and testing steam machinery, and after he left that company his work was along the same line. According to his own evidence, he had actually been engaged 11 years in the actual operation of steam boilers and engines. Other witnesses corroborated him on this point, and fur-

ther testified as to his qualifications for the office. That for 10 years prior to his appointment he had been recognized by his employers as a competent man to discover and repair all sorts of defects in old plants, and to handle and operate them, as well as new plants, was abundantly established by the evidence.

Unless we are to construe the statute as meaning that a person, to be qualified for the position of inspector, must have operated steam boilers and steam engines for at least 10 years to the exclusion of all other work it would seem that Gylstrom was not disqualified. That the statute cannot be construed so technically is evident from the fact that the appointee must also have had experience in the construction of boilers; and when we appreciate what kind of services are required of an inspector, we can easily see why some knowledge of construction is required. In addition, it is not amiss to say that a man with the varied experience of the respondent in examining, discerning defects, repairing, testing, putting in running order, and operating old boilers and engines for 10 or 12 years might easily become better qualified for the position of boiler inspector than a man who, for the same length of time, had actually operated a plant. His opportunities for practical knowledge, and his actual experience, might be much greater.

Finally, it is said that Gylstrom did not obtain a state license until just prior to his appointment. This fact has a bearing, but it is not conclusive. The statute in question does not make the eligibility of the appointee to depend upon when he has taken out an engineer's license, or whether or not he has ever had one. The test as to his qualification is actual experience in operating and suitable experience in constructing.

Our conclusion is that the writ should be quashed, and it is so ordered.

BUCK, J. (dissenting).

I dissent. In my opinion, the evidence completely fails to show that Gylstrom had at least 10 years of actual experience in operating steam engines and steam boilers. This is the test of his eligibility. It is not a question of the weight of evidence, but an utter failure to show the necessary qualification.

START, C. J. (dissenting).

I dissent. The office of inspector of boilers is a nonelective one, created by the legislature, which has the exclusive power to prescribe the qualifications of persons to be appointed to the office, and to restrict the appointing power to those possessing the prescribed qualifications. Neither the executive nor the judicial department of the state has any constitutional right to substitute other tests of eligibility in place of those prescribed by the legislature, although the substituted tests are equally as good, if not better, and result in securing competent officers. The statutory or legislative test in this case is this:

"No person shall be eligible to hold the office of inspector of boilers who has not had at least 10 years of actual experience in operating steam engines and steam boilers, * * * or who is not of good moral character, and suitably qualified by experience in the construction of steam boilers so as to enable him to perform the duties of the office." G. S. 1894, § 481.

The legislature, by this statute, prescribed three distinct qualifications which an inspector of boilers must possess. They are: (a) He must be a man of good moral character; (b) he must be suitably qualified by experience in the construction of steam boilers, so as to enable him to perform the duties of his office; (c) he must have had 10 years, at least, of actual experience in operating steam engines and boilers. That is, he must have had, prior to his appointment, not the equivalent, in the judgment of the appointing power, of 10 years' actual experience, but, in the aggregate, at least 10 years' experience in actually operating steam engines and boilers. Now, there can be no question in this case but that the respondent possesses the first and second of the specified qualifications, but as to the third test the evidence is conclusive that he never had 10 years', or any less number of years', actual experience in operating steam engines and boilers.

The evidence is summarized in the opinion of the court, and need not be here repeated; but it is to be noted that the whole of it, except the fact that when a boy 14 or 15 years old the respondent worked around steam boilers and engines in actual operation, generally assisting in firing, and that for six weeks he had exclusive

charge of and operated a small steam boiler and engine, is directed to establishing the fact that by his experience in making and repairing steam engines and boilers and in setting up steam plants he is suitably qualified to perform the duties of the office. It may be, and probably is, true, as suggested by the court, that by such experience and work he is better qualified for the office of inspector of boilers than he would have been if he had been engaged for 10 years in operating steam engines and boilers, but the fact remains that, in addition to the qualifications actually possessed by him for the office the legislature has ordained that he must bring himself within the third and absolute requirement of the statute by showing that he has had in the aggregate 10 years' actual experience in operating steam engines and boilers.

The legislature deemed this qualification to be of the first importance, and as to it left nothing to the discretion of the appointing power, but made it absolute. If there was any evidence in this case reasonably tending to support the conclusion of the governor that the respondent had had 10 years' actual experience in operating steam engines and boilers, the conclusion could not be set aside by the courts; but, as already suggested, there is no evidence or claim in this case that he ever did have 10 years' actual experience in operating them. The most that can be claimed from the evidence is that he has had the equivalent of such experience. To hold that he is eligible for this reason is to ignore the mandatory requirement of the statute, and substitute the discretion of the appointing power for the expressly declared will of the legislature.