## STATE ex rel. GEORGE T. SIMPSON v. VILLAGE OF DOVER and Others.[1]

Nos. 16,764—(42).

February 17, 1911.

**Unplatted territory included in village corporation — question of fact.**
> Whether unplatted territory, included within the limits of a village corporation, is so conditioned as properly to be subject to village government, is a question of fact, to be determined by the voters entitled to vote upon the question; and their decision cannot be disregarded, unless it clearly appears to have been the result of arbitrary action.

**Writ discharged.**
> It does not conclusively appear from the evidence that the unplatted territory of the objectors, incorporated in the village of Dover, was included for the purpose of exacting revenue for village purposes and without regard to its adaptability to village government.

[1] Reported in 130 N. W. 74, 539.

March 28, 1911.

**Attorney general not liable for costs.**

> Where quo warranto proceedings are instituted by the attorney general, as the representative of the sovereignty of the state, to redress an alleged usurpation of office or corporate franchises, he is not liable, officially or otherwise, to the defendant for costs in case the proceedings fail.

The attorney general, on behalf of the state, petitioned this court for a writ of quo warranto to require the respondent village and its officers to show quo warranto they held and exercised their respective offices, and on return of the writ that they be ousted therefrom and the incorporation of the respondent village be declared void. Among other allegations, the petition alleged that ninety-nine acres of unplatted land, lying north of the Chicago & Northwestern railroad track, and belonging to one estate, were entirely separated and cut off from access to the platted part of the village by the railway and by the right of way fences, and by a stretch of low wet ground which could not be built upon or used for village purposes; that one hundred seven acres in the unplatted part of the village, belonging to one person, were cut off from access to the platted portion by intervening lands, and there were no streets or alleys extending to them; that lands which were accessible to the platted portion and adjoined them on the west, and were accessible from the east and west highway, were not included in the territory embraced by the village; that the lands so omitted have been owned ever since 1907 by two of the petitioners for the organization of the village; that police protection was not required and would not naturally extend beyond the platted portion; that there was not likelihood that light or water plants, or municipal enterprises of any kind, would be extended beyond the platted portion; that the object of including the lands outside the platted portion was to levy taxes thereon for village purposes, although such lands were in no manner benefited by the proposed village government.

In their answer the respondents set up the proceedings by which respondent village was incorporated, and alleged that the lands outside the platted portion pertain to and are so conditioned as properly to be subject to village government, that all of the unplatted portion was within one hundred rods of that which was platted; that the

land west of the west line of the village was low and crossed by three creeks; that there were four bridges over such creeks which would involve heavy expense for maintenance and repair, and for this reason and because of its condition it was not included within the village, and not because it was owned by two of the petitioners for the incorporation. They alleged that the reason land further north was not included was on account of the existence of a large iron bridge just outside the present limits of the village and the expense of keeping up this bridge was the chief reason for omitting it.

The writ issued, and a referee was appointed, who took and returned to the court the testimony taken. Writ discharged.

*George T. Simpson*, Attorney General, *Codman & Miller*, and *Webber & Lees*, for relator.

*Burt W. Eaton* and *Callaghan & Granger*, for respondents.

LEWIS, J.

This proceeding was commenced to test the validity of the incorporation of the village of Dover. The territory is one mile square, and includes the east quarter of section 21 and the west three quarters of section 22, in Dover township, Olmsted county. At the time of incorporation, in December, 1908, the platted portion comprised seventy-five acres in a compact body, as will appear from the plat. The unplatted portion consists of five hundred sixty-five acres, mostly to the south and east of the village proper. To be more accurate, it is about one hundred sixty rods from Oak street to the east line of the corporation, and about two hundred rods from the south line of the platted part to the south line of the corporation; whereas, it is only about forty rods from Sheek street on the west to the west line, and a like distance between the northernmost platted part and the north line. The unplatted portion to the northeast and to the east and south is suitable and used for agricultural purposes.

The village proper is divided by the Chicago & Great Western Railway, which crosses east and west on Center street, while the Chicago & Northwestern Railway passes in a northwesterly and southeasterly direction adjoining the platted part on the north. At

PLAT OF
DOVER
SHOWING TOPOGRAPHY

the time of incorporation the population was two hundred forty-four, and at the general election in November, 1910, sixty-five votes were cast, and at the election to incorporate in December, 1908, fifty-five votes were cast. The assessed valuation of the unplatted real estate in 1910 was $12,875, and of the platted real estate $28,530. The total personal property, assessed valuation, was $34,377. Eight families, consisting of thirty-four persons, resided on the unplatted part. In the village proper are located the usual quota of business houses, shops, and factories, consisting of two depots, a Woodmen hall, post office, bank, three stores, a creamery, machine shop, lumber yard, printing office, three elevators, stockyards, a high school and a graded school, with eighty pupils, and one church. The village is the center of a populous and rich farming district, and its nearest competitors for trade are the villages of Eyota, six miles to the west, and St. Charles, four miles to the east.

The evidence discloses that the northern boundary was extended beyond the railway right of way, for the purpose of taking in a pond, with ice privileges and a gravel bed, and at the same time was limited to leave out a steel bridge across a creek on Chatfield street extended. The western boundary was fixed to avoid the responsibility of maintaining three bridges across a creek, and it is claimed that it was not desirable to include certain low overflow land along the creek bottom. It was also claimed that the line was extended to the east and south to secure a compact body of land one mile square which would be suitable for village purposes.

In the absence of constitutional limitations, the legislature is at liberty to exercise its judgment as to what territory shall be included within incorporated villages. In this state it has been deemed best to establish certain rules by legislative enactment for the guidance of those communities desirous of establishing the village form of government. One statutory limitation is that, if unplatted lands are taken in, they must adjoin the platted lands; but there is no attempt to limit the extent of the unplatted part. That must necessarily depend on the conditions of each particular case. Another statutory limitation is that the unplatted lands must be so conditioned as to be properly subject to village government. The statute

recognizes the necessity of including such territory, but this does not mean that lands used for agricultural purposes cannot be included. It does not mean that there must be a present necessity for such lands for building or other village purposes. It is not necessary that all such lands shall be platted, graded, or used for village purposes at any particular time in the future. Adjoining lands may be brought within the limits of the corporation and be subjected to village government, if it may fairly be said that there exists, or may exist within a reasonable time in the future, a unity of interest in the enforcement of the law, such as police patrol and the public health.

It is not an objection that other adjoining territory was omitted which might have been included. The exclusion of adjoining territory, which might have been included, does not condemn as arbitrary the inclusion of territory which might have been excluded. The eastern and southern tier of forties might have been omitted, or the next tier of forties to the west and north might have been included, with the result that the platted part would be more nearly in the center. But it is not a requisite that the nucleus be in the center. The Taylor farm to the east, and the Demro land to the south, may be too far away to secure immediately the same water, light, and sewer privileges enjoyed in the platted portion. But it does not appear why they should not be entitled to police and fire protection. They certainly have the privileges of the schools. The taxes upon these lands may be slightly increased, and the present benefits may not be fully compensatory. But the law does not require equality in such cases. Lands so located as to be easily accessible to the advantages of schools and market privileges are naturally enhanced in value for that reason, and their inclusion within the corporate limits is a contingency which may reasonably be anticipated.

The line must be drawn somewhere. What territory shall and what shall not be included is a question of fact, to be determined by the people immediately interested. The soundness of their judgment in passing on the question must be tested as questions of fact in other cases are tested on appeal. If the evidence reasonably tends to show that the decision is within the statute, then the courts

cannot interfere. The case differs radically from the following cases: State v. Minnetonka Village, 57 Minn. 526, 59 N. W. 972, 25. L.R.A. 755; State v. Village of Fridley Park, 61 Minn. 146, 63 N. W. 613; State v. Village of Holloway, ·90 Minn. 271, 96 N. W. 40; State v. Village of Gilbert, 107 Minn. 364, 120 N. W. 528. In State v. Village of Alice, 112 Minn. 330, 127 N. W. 1118, the very sweeping statement of facts in the answer was sustained, under the liberal rule applied to the .construction of pleadings on demurrer.

It is our opinion that it fairly appears that the corporate limits were adjusted in the reasonable exercise of the judgment of the voters, and that the inclusion of the lands belonging to the objectors was not arbitrarily included for the purpose of exacting revenues without compensation.

Writ discharged.

JAGGARD, J., took no part.

Costs having been taxed against the attorney general, he appealed from the clerk's taxation, and on March 28, 1911, the. following opinion was filed:

PER CURIAM.

. This was a proceeding by information of the attorney general, in the nature of quo warranto, against the village of Dover, to determine by what right it exercised the powers of a municipal corporation. The clerk taxed costs in favor of the respondents and against the attorney general. He appealed from the taxation.

An information in the nature of quo warranto, as respects procedure, is governed by the common law, as modified by Statute 9 Anne, c. 20, and our own statutes. State v. Sharp, 27 Minn. 38, 6 N. W. 408. The right to costs in such cases is purely statutory. Costs were awarded by the statute of Anne against the defendant when he failed, and in his favor when he prevailed, against the person upon whose relation the attorney general instituted the proceed-

ings, if his name was brought upon the record.    State v. Village, 32 Vt. 50.

Our statute, R. L. 1905, § 4350, is substantially to the same effect, which provides that: "Whenever an action or proceeding is instituted in the name of the state on the relation or petition of any citizen, such relator or petitioner is entitled to, and liable for, costs and disbursements in the same cases and to the same extent as if such action or proceeding had been instituted in his own name."

It is obvious that this statute has no application to the attorney general in cases where he institutes the proceeding in his official capacity.    The attorney general, however, when he institutes quo warranto proceedings on the information of a private party, may in his discretion join such party as a relator, who, in case the proceedings fail, will be liable to the defendant for costs.   This course was adopted in the case of State v. Sharp, 27 Minn. 38, 6 N. W. 408. It would seem that such a course is only fair and just to the defendant, when the attorney general acts upon the information of private parties, who are permitted to prosecute the proceeding by attorneys of their own selection.    See, in this connection, State v. Probate Court of Rock County, 67 Minn. 51, 69 N. W. 609, 908.

Where, as in this case, quo warranto proceedings are instituted by the attorney general, as the representative of the sovereignty of the state, to redress an alleged usurpation of office or corporate franchises, he is not liable, officially or otherwise, to the defendant for costs in case the proceedings fail.    State v. Boston, 25 Vt. 433; Attorney General v. Illinois, 85 Ill. 516; Houston v. Neuse, 53 N. C. 476.    This conclusion necessarily follows from the rule that the state, like any other sovereign, does not pay costs unless otherwise provided by statute.    3 Blackstone, Com. 400.   This is a proceeding by the state on the relation of the attorney general, an action by the state, and there is no statute making either liable for costs.

This case is clearly distinguishable from that of Bartles Oil Co. v. Lynch, 109 Minn. 487, 491, 124 N. W. 994, which was an ordinary civil action, in which the statute allows costs, to restrain the defendant, who was state oil inspector, from interfering with the plaintiff's business of selling a particular brand of illuminating oil.

The defense was that the sale of the particular brand was forbidden by statute, and that it was the defendant's official duty to prevent its sale. But the proposed sale was not illegal, and the defendant had no right, officially or otherwise, to interfere with it, and his attempt to do so was his individual act; precisely as if the statute under which he claimed to act had never been enacted.

Clerk's taxation reversed.