STATE ex rel. WILKIE et al. v. STEIN et al.
No. 7774.

Court of Civil Appeals of Texas. Austin.
June 8, 1932.

Rehearing Denied June 29, 1932.

See, also, 47 S.W.(2d) 703.

Morriss & Morriss and Reed Cozart, all of San Antonio, for appellants.

H. H. Sagebiel and Alfred P. C. Petsch, both of Fredericksburg, and Cunningham, Moursund, Johnson, Rogers & Slatton, of San Antonio, for appellees.

BLAIR, J.

The opinions on former appeal, reported in (Civ. App.) 18 S.W.(2d) 204, (Com. App.) 26 S.W.(2d) 182, and (Com. App.) 36 S.W.(2d) 698, state the nature of this suit. Briefly, it is an action of quo warranto by relators to declare void the incorporation of the town of Fredericksburg, and to require its officers, respondents, to show quo warranto they hold and exercise their respective offices. The former appeal involved the sufficiency of relators' petition as against a general demurrer to allege any ground showing that the incorporators or voters of the town acted fraudulently or arbitrarily in excluding the territory which relators charge should have been included within the corporate limits, the Commission of Appeals ruling that it was a question of fact to be determined as in other cases whether the incorporators acted fraudulently or arbitrarily in excluding such territory.

This trial to the court without a jury resulted in a judgment sustaining the incorporation of the town; hence this appeal.

In remanding the cause for trial, the Commission of Appeals announced the following rules governing the trial:

"The law gives to the qualified voters of the inhabitants of a town or village the right to fix the boundaries of the territory sought to be embraced in the proposed incorporated town or village. What territory shall, or shall not, be included, is a question of fact to be determined by the people immediately interested. The soundness of their judgment in passing on the question must be tested as a question of fact, as in other cases. If the evidence reasonably tends to show that the method pursued by those who seek to incorporate a given territory is within the statute, then the courts cannot interfere. * * *

"If the corporate limits of a town or village are adjusted in the reasonable exercise of the judgment of the voters, and the exclusion or inclusion of lands, belonging to those who might object thereto, was not arbitrarily done, as for instance, for the purpose of exacting revenues without a compensation, or to prevent inhabitants of a given territory from participating in the advantages of the incorporation, whose situation is such as to reasonably and conveniently entitle them to such advantage, then in such a case the courts would be without power to interfere. State ex rel. Simpson, Attorney General, v. Village of Dover et al., 113 Minn. 452, 130 N. W. 74, 539; 43 C. J. p. 80 et seq." 36 S.W.(2d) 698, 699.

The sole question on this appeal is whether it conclusively appears from the evidence that the incorporators acted fraudulently or arbitrarily in excluding from the corporate limits of the town of Fredericksburg the territory which relators charge should have been included. The allegations that the incorporators of the town of Fredericksburg fraudulently excluded the territory in question is not sustained by the evidence. The committee appointed to lay out and ascertain the boundaries of the city carefully made a survey of the territory which they thought. would make a compact corporation, having in mind to include only the densely populated portions of the town which could be readily served with waterworks and sewerage system, and which was greatly in need of fire protection and sanitary regulations, and so as to not impose an extra heavy tax burden by unnecessarily extending the waterworks and sewer system to sparsely settled or rural portions of the adjacent territory. The territorial limits were advertised, showing what the incorporators proposed to include, and an election duly held at which a majority of the votes were cast for incorporation of the territory. There is no evidence that any one was fraudulently misled or dealt with in the incorporation of the town.

In passing upon the question of whether it conclusively appears that the territory claimed by relator should have been included as a matter of law, we find the evidence substantially as follows:

In 1846, the town of Fredericksburg was established, and a map and plat of it were made. The original town consisted of a thickly settled community, laid off in town lots of 100x150 feet; the courthouse being established near the center of the plat, surrounded immediately by the business houses and farther out the residences. Adjoining these platted lots was laid off in 10-acre blocks the surrounding territory, which lots were in early days assigned to and farmed by the inhabitants of the town. The original town lots have practically all been built upon, and some of the 10-acre farm blocks have been platted into town lots and part of them built upon, particularly since 1900.

The town of Fredericksburg has never been incorporated before this election, and the incorporated area shows a population of about 2,100 persons. This was the fourth attempt to incorporate the town; the other three attempts being unsuccessful. The first attempt included a territory larger than the one in question; the second a smaller territory; the third a larger territory; and each failed to carry by a majority vote. The territory which the committee selected to comprise the present corporate limits consisted of the old town of Fredericksburg, as platted in 1846, and was extended northeast so as to take in several platted and inhabitated blocks and the public schools. On the south, and east it was extended so as to include Baron's creek, the purpose of the incorporators being to extend waterworks and sewer system to the public schools for sanitary purposes, and to take in Baron's creek in order that sanitary regulations with reference to dumping dead animals might be passed. The original town took in practically all of the business establishments of the town and a large portion of the residences. The present corporate limits include all of the territory densely populated and in need of fire and sanitary protection, and is a compact territory, excluding all rural territory except possibly two small blocks of 10 acres each, which were included in order to make the lines of the incorporation straight.

While it may not be of any great importance, all of the relators and their property were included in the territory incorporated, and each had a right to vote and did vote at the incorporation election. There is no evidence showing that any one whose land was excluded is complaining of the incorporation; and in fact relators' witnesses testified that all of those with whom they talked, living in the excluded territory, expressed themselves as being satisfied that they were left out of the incorporation. We make this statement because the opinion of the Commission of Appeals shows that they interpreted relators' pleadings as showing relators to be those excluded from the corporate limits; whereas the undisputed proof shows the contrary. The committee also took into consideration the territory excluded and that included with reference to whether it was susceptible at a reasonable cost of being included and served with public utilities. They also considered the questions that were raised on former efforts to incorporate the city, both by those who were included and those who were excluded. Some who were included complained on former elections because the territory was too large to install a waterworks and sewerage system, contending that the cost would be too great and place too great a tax burden upon all of the citizens, whereas, if the territory was limited to compact and densely settled portions and the business section which were in greater need of the sanitary and water systems and fire protection, the cost would not be nearly so great; and with this in mind the committee selected by the Chamber of Commerce recommended and included in their petition for incorporation the territory now comprising the incorporated town.

The territorial limits comprise about 745 acres. Relators' original petition alleged that territory aggregating 345 acres had been wrongfully excluded, describing the territory; by trial amendment an additional 224 acres, making a total of 569 acres, which they alleged had been wrongfully excluded from the corporation. In this 569-acre territory the population was about 615, with about 327 voters. About 180 acres of the 569 acres was farm land. The remainder of the 569 acres consisted of unimproved tracts and platted additions adjacent to the incorporated area, or separated from the incorporated area by vacant property or Baron's creek, and some of the additions had been built on public highways traversing and leading out of the town of Fredericksburg, and many of the houses included in this area were farm houses, built along such highways. The additions were platted from about 1900 to 1920. The incorporated area had a population of about 2,050, and 841 voted at the incorporation election. The value for which the properties in the alleged wrongfully excluded 569-acre area were rendered for taxation, was about $280,000; while that of the incorporated area was about $1,600,-000. In addition to the 180 acres of farm land which the incorporators were legally authorized to exclude, most of the remainder of the 569-acre territory could have been legally excluded by the incorporators in the exercise of their reasonable discretion under the above-quoted rules of the Commission of Appeals on the former appeal of this case; and, when that rightfully excluded is eliminated, the remainder was not of such substantial portions, either as to territory or population, as would invalidate the incorporation, although it might have been properly included. The portions of the 569-acre area not used exclusively for farming or agricultural purposes consist, briefly, of the following:

(1) Walch Terrace addition, lying south of the corporate limits and across Baron's creek, was platted in 1914. It consists of a large number of blocks and lots, but on which a very few houses had been built. It is lower than the original town, and most of it is separated from the incorporated area by two creeks; and, on account of the topography of territory, it was impracticable to embrace it in the incorporation.

(2) The supplement to Walch's addition, lying adjacent to Walch Terrace and immediately west thereof, is the same as Walch Terrace addition with reference to its improvements and topography; and the incorporators were clearly authorized to exclude this territory.

(3) Immediately north of this addition, lying in the fork of Winfried and Baron's creeks, is Schulz's Garden addition. It is much lower than the city, and had only a few houses though there are more than 100 lots in the addition; and the incorporators were entitled to exclude this.

(4) The South Side, Live Oak Hill, and Bismarck additions are small additions lying adjacent to and south of the railroad, and across Baron's creek from the incorporated town, with unplatted and vacant territory between them and the incorporated town; and their exclusion from the incorporation was authorized.

(5) South Heights addition, platted in 1913, consists of about 100 acres cut up in blocks and lots, and on which there are about 32 houses, or one house to about every 3 acres. The territory is farm land, except where the houses are built. It lies south of Baron's creek, across a long bridge, which the incorporators did not include because of the expense of upkeep. The addition, like the last above mentioned additions, is also situated on a high point, which would require additional height on the water reservoir to force water to that addition; and the incorporators were clearly authorized to exclude it on account of the additional expense and tax burden that would be placed upon the incorporators, as well as the inhabitants of the excluded territory.

(6) The Itz addition, platted in 1907; Basse addition, platted in 1914; College addition, platted in 1906—are tiered on and lie immediately northeast of the corporate limits of the town as incorporated. These additions have an average of about one house to every four lots; the vacant lots being cultivated in corn, feed, and gardens. There are in this territory and in Burgdorf addition, platted in 1908, and lying immediately east of these blocks, about 200 citizens and about 100 qualified voters. No one in this territory is complaining because they were left out of the incorporation; and the testimony is undisputed that to have extended the waterworks system and the sewerage system so as to serve these additions it would have increased the tax burden upon all of the inhabitants, including these excluded additions. It is true the evidence does not show any condition with reference to the topography of this territory which would have excluded it solely on that ground; but the additional cost of extending the public utilities to these additions would have been larger and a greater tax burden imposed. The evidence also shows that practically all of these additions are settled in recent years by retired farmers and ranchmen, who have moved to this territory and are using vacant lots on which to raise feed for their stock and gardens for their families. Because these additions are sparsely settled, sanitary conditions do not necessarily disturb them, and they are not particularly in need of fire protection; and, while this territory may have been included by the incorporators, we think the corporation not invalid because of their exclusion under the rule announced in State ex rel. Simpson v. Village of Dover et al., 113 Minn. 452, 130 N. W. 74, 539; 43 C. J. 80; and the opinion of the Commission of Appeals citing these authorities, 36 S.W.(2d) 698, 699, to the effect that "where the incorporation of a town is otherwise regular and legal, the fact that lands are included which ought not to have been included may not render the entire incorporation invalid; and the failure to include territory which might properly have been included is not fatal." Our statute provides an easy method of bringing into the corporation such adjacent territory which by growth becomes urban, and we would not be justified in declaring the incorporation invalid merely because this portion of the territory was excluded.

We find the same to be true with reference to what is described as Walter's addition, a small addition on the northeast of the present city limits, and also of what is known as Wehmeyer & Saenger and Priess additions, lying immediately west of the city limits. These are very small additions, and are built on highways leading out of Fredericksburg; and, while most of the lots in them have been built upon, they form small extensions off from the boundaries of the present town limits, and were for that reason excluded from the territory incorporated. They may have been properly incorporated along with the other parts of the town, but the exclusion of these small additions, absent any arbitrary conduct on the part of the incorporators, will not vitiate the incorporation. We find nothing in the evidence which would warrant us to conclude as a matter of law that in incorporating the town of Fredericksburg the incorporators acted in disregard of the rights of any territory or population excluded from the incorporation, or that they acted arbitrarily as a matter of law.

Judgment of the trial court will be affirmed.

Affirmed.