# STATE EX REL. ASSOCIATED MASTER BARBERS & BEAUTICIANS AND OTHERS v. JOSEPH EISCHEN AND ANOTHER.

86 N. W. (2d) 652.

November 15, 1957—No. 36,784.

*McGuigan & McGuigan,* for relators.

*Miles Lord,* Attorney General, *Harold J. Soderberg,* Special Assistant Attorney General, and *Robert Hoffman,* Special Assistant Attorney General, for respondents.

THOMAS GALLAGHER, JUSTICE.

This is a proceeding in quo warranto brought by Associated Master Barbers and Beauticians of Minnesota, and its officers, to ascertain whether respondents, Joseph Eischen and Peter Odegard, possess the qualifications prescribed by M. S. A. 154.22 for membership on the State Board of Barber Examiners to which they were appointed by the governor on July 22, 1955.

Section 154.22 provides in part that:

"* * * Each member shall be a practical barber who has followed the occupation of a barber in this state for at least five years immediately prior to his appointment. Each member shall be a graduate from the eighth grade of a grammar school, or have an equivalent education, and must have knowledge of the matters to be taught in approved schools of barbering, as set forth in section 154.07, and

shall be qualified and competent to pass upon all matters likely to come before the board. One of the members shall be a member of, or recommended by, a union of journeymen barbers which shall have existed at least two years, and one shall be a member of, or recommended by, the master barbers association of Minnesota."[1]

Relators originally challenged respondents' rights to their respective offices on the ground that after their appointments no member of the three-man board was a member of, or recommended by, the master barbers association of Minnesota; and further challenged the appointment of respondent Eischen on the ground that he did not qualify on July 22, 1955, as "a practical barber who has followed the occupation of a barber * * * for at least five years immediately prior to his appointment."

After the institution of these proceedings, a vacancy on the board was filled by the appointment thereto of a member of the Associated Master Barbers and Beauticians of Minnesota so that the issue raised by relators' first objection has become moot. Since respondent Odegard is possessed of the other qualifications prescribed by § 154.22, the only question now remaining for decision is whether respondent Eischen is "a practical barber who has followed the occupation of a barber * * * for at least five years immediately prior to his appointment."[2]

On April 18, 1956, this court appointed the Honorable Lars O. Rue to hear evidence and report findings and conclusions on this issue. These were filed October 5, 1956, and in substance disclosed the following: At the time of the hearing Joseph Eischen was 50 years of age. He was graduated from grammar school and high school, and from the University of Minnesota with a degree of bachelor of business administration. He fulfilled his three years' apprenticeship for the trade of barbering in 1925, after which he was examined and licensed as a barber by the state board, and ever since that time has held such license.

---

[1] It is agreed by all parties that "master barbers association of Minnesota" specified in this section is identical to Associated Master Barbers and Beauticians of Minnesota, one of the relators herein.

[2] We have held that this requirement is constitutional. State ex rel. Associated Master Barbers & Beauticians v. Eischen, 246 Minn. 559, 76 N. W. (2d) 385.

From 1935 until his appointment to the board in 1955, he was secretary-treasurer of Barbers Union, Local 61, a union of journeymen barbers. This position required but part of his time, and he was compensated therein at the rate of $55 per week plus a monthly allowance for expenses. In his work for the union among other duties he was required to evaluate the experience and ability of barbers for the purpose of placement in various localities throughout the state. During a portion of this employment, he served on the advisory board of the Minneapolis Department of Education to advise it on matters relating to vocational training for barbers.

In addition, during this period he completed several courses in barbering through correspondence conducted by the parent body of his union and through the University of Minnesota. In 1949 and 1951 he obtained teacher's certificates from the state Department of Education which authorized him to teach barbering in vocational classes in the public schools of Minnesota. On November 2, 1953, in a competitive examination for the position of barber inspector, given by the Minnesota Civil Service Commission, he received a grade of 95.5, placing second in rank amongst the contestants. Occasionally during 1951 and 1952, he served as a substitute teacher in the Minneapolis public schools.

During the five years immediately prior to his appointment to the board, on the average of about once a week, he gave haircuts and shaves to invalids of both sexes in their homes and occasionally traded haircuts with other barbers in their shops. His income from such activities averaged about $217 per year during the five years preceding his appointment. It is conceded that he was a member of, and recommended by, a union of journeymen barbers which had existed at least two years prior to his appointment as prescribed by § 154.22.

Based upon these findings the referee concluded that Eischen was a practical barber within the meaning of § 154.22; that he had the required education and knowledge of matters to be taught in approved schools of barbering as set forth in § 154.07; that he was qualified and competent to pass on all matters likely to come before the board; but that he had not followed the occupation of a barber for at least five years immediately prior to his appointment.

■ In quo warranto proceedings of this kind, the burden of proof rests upon the party whose right to hold office is challenged. He is required to prove facts justifying his right to exercise the powers of the office which he holds. State ex rel. Childs v. Board of Co. Commrs. 66 Minn. 519, 68 N. W. 767, 69 N. W. 925, 73 N. W. 631, 35 L. R. A. 745; State ex rel. Probstfield v. Sharp, 27 Minn. 38, 6 N. W. 408; 16 Dunnell, Dig. (3 ed.) § 8072.

■ In determining whether this burden has been met, the courts are restricted from acting within the limits of the discretionary authority vested in the appointive power and must be wary of any possible judicial usurpation thereof. This required judicial restraint has given origin to a presumption in favor of a challenged appointee. Smith v. People ex rel. Frisbie, 44 Ill. 16. If there is evidence which reasonably tends to support the conclusion of the appointive power that an appointee possesses the qualification prescribed by statute, the courts will not interfere with the exercise of the appointive power involved. State ex rel. Douglas v. Gylstrom, 77 Minn. 355, 79 N. W. 1038; State ex rel. Johnson v. Starkey, 49 Minn. 503, 52 N. W. 24. Arising out of these principles is the further rule that statutes prescribing qualifications for appointees to public office must be liberally construed. State ex rel. Johnson v. Starkey, *supra*.

■ It follows that our function here is to determine whether the governor, in arriving at the conclusion that Eischen possessed the qualifications prescribed by § 154.22, exceeded the discretionary limits of the power delegated to him to make the appointment. If the referee's findings give support to the governor's conclusion in this respect, then this court may not interfere with such appointment. In other words, what we are concerned with is not whether the findings support the referee's conclusion, but rather whether they are sufficient to sustain the governor's conclusion that Eischen followed the occupation of barbering in this state for at least five years immediately prior to his appointment to an extent sufficient to meet the requirement of § 154.22.

■ We are of the opinion that the findings do form a sufficient basis to give support to the governor's conclusion on this question. Section 154.02 defines barbering as:

"Any one or any combination of the following practices when done upon the head and neck for cosmetic purposes * * * and when done for payment directly or indirectly or without payment for the public generally constitutes the practice of barbering within the meaning of this chapter: to shave, trim the beard, cut or bob the hair of any person of either sex for compensation or other reward * * *."

The findings make clear that Eischen repeatedly performed the barbering services described in § 154.02 during the five-year period immediately prior to his appointment. In addition, his service as an officer of the Barbers Union required the repeated application of his knowledge of the trade and it would seem harsh to hold that his activities on behalf of his profession must be regarded as distinct from the occupation of barber so as to disqualify him from serving on the board. If the term were thus limited as relators contend it should be, it would possibly mean that a journeyman appointee to the board could not be reappointed thereto after the expiration of his three-year term thereon, for it would mean that as of that time he would not have been engaged in the occupation of barbering for three years immediately prior to the date upon which the new term of office would begin.

■ Further, it is to be noted that § 154.22 does not require that the prospective appointee shall have followed the occupation of barber to the *exclusion of all other activities or occupations.* In 67 C. J. S., p. 74, amongst other definitions, the term "occupation" is described as:

"* * * a relative term, in common use with a well-understood meaning, and very broad in its scope and significance. It * * * compasses the incidental, as well as the main, requirements of one's vocation, calling, or business. * * *

      \*     \*     \*     \*     \*

"A person may engage in more than one occupation, as where he pursues one business during a part of each year and for the remainder of the year pursues a seasonable occupation; or he may engage in two occupations at the same time * * *."

Keeping in mind the generality of such definitions, as well as the general language of § 154.22, it seems clear that even if it were held

that Eischen's work on behalf of Local 61, which required but a part of his time, did not constitute barbering, since in addition thereto during a portion of the remainder of his time for five years immediately prior to his appointment he had followed the occupation of a barber within the definition set forth in § 154.02, he was eligible for appointment to the board under § 154.22.

■   Our conclusion in this respect is in accordance with the decision in State ex rel. Douglas v. Gylstrom, 77 Minn. 355, 79 N. W. 1038, where the governor's appointment of a state boiler inspector was challenged under a statute which required that an appointee to such position have "10 years of actual experience in operating steam engines and steam boilers, * * *." There, the appointee could show only that for a two-year period, when he was between the ages of 14 and 16, he had assisted in firing a steam boiler, and, for six weeks of this time, he had had charge of a small boiler. Thereafter, for a continuous period of 12 years prior to his appointment, he had engaged in the business of buying, selling, repairing, and making steam engines, making and repairing steam boilers, and setting up steam plants. There it was stated (77 Minn. 358, 79 N. W. 1039):

"Unless we are to construe the statute as meaning that a person, to be qualified for the position of inspector, must have operated steam boilers and steam engines for at least 10 years *to the exclusion* of all other work it would seem that Gylstrom was not disqualified. That the statute cannot be construed so technically is evident from the fact that the appointee must also have had experience in the construction of boilers; and when we appreciate what kind of services are required of an inspector, we can easily see why some knowledge of construction is required." (Italics supplied.)

We likewise must hold here that the findings of fact are not such as to require this court to interfere with the conclusion of the governor that respondent Eischen possessed the qualifications prescribed by § 154.22.

Order that the writ be quashed.