JOSEPHINE MORTENSEN v. CENTRAL LIFE ASSURANCE ASSOCIATION OF THE UNITED STATES, Appellant.

**Insurance:** EXCLUDED RISKS: STIPULATION: CONSTRUCTION. The risk incident to removing a well casing by the use. of dynamite, by one engaged in the business of " dealer in pumps and well supplies," is not excluded by the terms of a policy providing, that the occupation of handling or transporting inflammable or explosive substances are not assumed by the association.

*Appeal from Polk District Court.*— HON. A. H. McVEY, Judge.

WEDNESDAY, JUNE 8, 1904.

ACTION on a policy of life insurance, brought by the beneficiary named in the policy against the insurance company, to recover the amount due under the policy, on account of the death of the assured. The defendant alleged that the death of the assured resulted from a cause which was excepted by the terms of the policy. A demurrer to the answer was sustained, and, on failure of defendant to plead further, judgment was rendered in favor of the plaintiff for $1,000, with interest and costs. Defendant appeals from this judgment.—*Affirmed.*

*Carr, Hewitt, Parker & Wright,* for appellant.

*McLennan & Brennan,* for appellee.

McCLAIN, J.— In the application for the policy on which this action was brought, the assured stated that his occupation was " dealer in pumps and well supplies." It is set out in the answer that the assured died within a year after the policy was taken, by reason of an explosion result-

ing during the attempt to blow out a well casing with dynamite, such attempt having been made in the course of his business in selling and handling windmills and pump supplies; and it is alleged that the death of the assured was within an exception to the liability of the company contained in the following paragraph of the policy:

This policy grants freedom of occupation after one year from date of issue without prejudice to claim, except that military service in time of war is forbidden, unless a permit has been previously obtained; in case of death from service in war without such permit, the society shall pay, on receipt of proof, the reserve on the within policy only. The following occupations are risks not assumed by this society during the first year: Blasting, mining, submarine labor, aeronautic ascensions, the manufacturing, handling or transporting of inflammable or explosive substances, service upon railroad trains in switching or coupling cars, self-destruction or death in consequence of violation of law during the first year are risks not assumed by this society.

It is conceded by counsel for appellant that there was no change of occupation on the part of the assured such as to render the policy void under any stipulation found therein; that is, there was not a change of general occupation, by which the company was relieved from liability according to the stipulations as to occupation usually found in life or accident policies, by reason of the fact that the assured was engaged at the time of his death in the doing of some act not incident to the occupation specified in the policy. *Holiday v. American Mutual Accident Association,* 103 Iowa, 178. But it is contended that the language quoted from the policy in question does not refer to a change of general occupation from that specified in the policy, but is to be construed as an exemption from liability for death resulting from particular classes of risks; in other words that when the assured handled dynamite, even in the prosecution of his general occupation of dealing in pumps and well supplies, he incurred a risk not assured by the defendant under the

policy, and that there can be no recovery from death resulting from such act. The argument is that while the term "occupation," as ordinarily used in an accident policy, refers to a general occupation, and not to any particular act not incident to that occupation, unless there has been a change of occupation within the provisions of the policy, yet that, under this contract, the handling of an explosive substance was in itself an occupation the risk of which was not assumed by the defendant. In support of this construction of the language of the contract, counsel rely upon a definition of the term "occupation" usually found in standard dictionaries as "the state of being occupied or employed in any way; that which engages one's time or attention; work; employment," rather than a definition, also usually given, as "the principal business of one's life avocation; employment; calling; trade"; and this argument is supported by reference to other employments named in the portion of the policy quoted, such as those of blasting, aeronautic ascensions, and service on railway trains in switching or coupling cars, which it is contended are not occupations in the sense of constituting the business of one's life, profession, trade, calling, or vocation, but are simply acts which may occupy or engage the time and attention. It is further urged that self-destruction is not an occupation within the language used, although the risk of death therefrom was manifestly intended to be excluded from the risks for which the company would be liable. But with reference to the suggestion as to self-destruction, it is plain that the punctuation of the clause quoted is faulty, and that it was not intended to denominate self-destruction as an occupation. The provision as to self-destruction or death in consequence of a violation of a law is evidently a sentence complete in itself, and has no bearing on the meaning to be given to the term "occupations" already used.

The simple question, then, is whether, in saying that

certain classes of acts are occupations the risks of which are not assumed by the company, it was intended that risks, resulting from any particular act of the kinds described were excluded, or whether, on the other hand, only risks resulting from those acts were excluded if they should be acts incident to general occupations involving the doing of such acts, and we are clearly of the opinion that the language was used with the latter, and not with the former, of these two meanings. Could it be said, in any reasonable construction of this language, that, if the assured had been killed by the bursting of his revolver while defending his home against the intrusion of a burglar, he was engaged in the occupation of handling explosive substances, so as to defeat the right of the beneficiary to recover? And yet, within the meaning which counsel seek to put upon the language of the policy, he would in that act have been engaged in an occupation the risk of which was expressly excluded by the terms of the policy. Or could it be reasonably contended that if, in some case of emergency, he should have attempted to pull out a coupling pin between two railway cars, not doing the act as incident to any business, calling, or vocation, but as the result of a sudden and proper impulse to act as any person may feel called upon to act under peculiar circumstances, he was engaged in the occupation of service on a railway train? We think it plain that, while the handling of explosive substances may not be a separate or distinct occupation within the meaning of that term as properly used to indicate a business, employment, or calling, it was intended by the language of the policy to be enumerated as one of the risks for which the company did not become liable, only where it was incidental to some general occupation necessarily or reasonably involving such an act. It is significant that the exception relates to risks from the occupation named only during the first year of the existence of the policy, and it seems reasonable to infer that the clause was intended to

relate to an occupation, in a general sense, which should be different from that named in the application or policy as the occupation of the assured; for, if risk of death from certain specified acts had been intended, no reason is apparent why the exemption from liability with reference to such particular acts should not have extended throughout the life of the policy. We agree with counsel for the appellant that it is proper in this case to bear in mind the usual provisions of life policies as distinct from accident policies, but we think that this furnishes an argument for the construction which we adopt. It is not usual in life policies to except particular **risks from acts** which may be incidentally done not in pursuance of any specially dangerous occupation, business, or calling. The assured may reasonably be required to abstain from dangerous occupations or employments, but can hardly be supposed to have understood that he must have in mind the terms of his policy in doing a particular act such as any person may incidentally feel himself called upon to do which does not involve the assumption of the risk of a specially hazardous and prohibited employment.

Without further amplification, it is sufficient to say that we do not think the risk of using a stick of dynamite in the attempt to remove a well casing while engaged in the prosecution of the business specified in the contract constituted a risk excluded by the policy under the language relating to the occupation of handling explosives, and the judgment of the trial court is therefore AFFIRMED.