LUTHER T. KENNY, Appellee, v. BANKERS ACCIDENT INSURANCE CO. OF DES MOINES, IOWA, Appellant.

**Accident insurance:** LIMITATION OF ACTIONS.    Where an accident policy provides for a weekly indemnity not exceeding a period of one year in case of a nonfatal injury, and total disability ensues, a cause of action does not accrue until one year from the date of the injury; and an action brought within six months from such date is timely, both within the provisions of a policy requiring that an action shall be commenced within six months after disability terminates or assumes a permanent character, and sections 1744 and 1820 of the Code, which are applicable to accident insurance companies.

**Instructions:**  STATEMENT OF ISSUES.    It is not necessary to a proper submission of a cause that the court make a formal statement of the issues; it is enough if the jury is directed to the facts necessary to be found to justify a recovery; and are instructed as to what will defeat recovery.

**Submission of issues.**    The court need not submit an issue as to the contract limitation of time within which an action may be brought, where the same was commenced within the statutory period; and where there is no such misrepresentation as to occupation as will affect the liability of an insurance company such an issue need not be submitted; and where all the evidence in support of an issue is stricken there is no question to submit.

**Accident insurance:** DISEASE.    Where an accident policy of insurance provided less liability in case of disease resulting from accidental injury than for disability resulting solely therefrom, the question of whether the trouble referred to in the evidence as a disease arising from the injury was such a disease as the policy contemplated, was for the jury.

**Change in occupation.**    An accident policy of insurance is not for-

feited on the ground of change in occupation, by reason of the fact that assured is accidentally injured while temporarily engaged in a different work, although not so provided in the contract.

**False representations:** EVIDENCE. Evidence that an assured had neglected to renew another policy on its expiration, when notified that he must do so if he desired to continue the same, is inadmissible to show a rejection, or the cancellation of a certificate by another company.

**Same.** The performance of acts of exercise, diversion or recreation do not amount to a change of occupation which will avoid an accident policy providing against a more hazardous occupation.

**Classification of risks:** The executive committee of an accident insurance company has no power to adopt a classification of risks unless expressly authorized.

*Appeal from Sioux District Court.*— HON. J. L. KENNEDY, Judge.

THURSDAY, OCTOBER 24, 1907.

ACTION at law upon a policy of accident insurance. From a verdict and judgment for plaintiff, defendant appeals.— *Affirmed.*

*N. T. Guernsey, Chas. Hutchinson,* and *Orr & Te Paske,* for appellant.

*Clarence A. Plank* and *Ericson & Stickney,* for appellee.

DEEMER, J.— In the year 1901, defendant company issued to plaintiff an accident insurance policy, whereby it insured him against bodily injury caused solely by external, violent, and accidental means, agreeing to pay during the continuance of non-fatal injuries $25 per week for a time not exceeding fifty-two weeks, which said injuries should independently of all other causes immediately, wholly, and continuously disable him from transacting any and every kind of

business pertaining to his occupation as stated in his application. The policy also contained these provisions:

In the event of claims for indemnity on account of disabling injuries of which there is no external mark on the exterior of the body of the assured visible to the eye, accidental injuries resulting in or from or caused directly or indirectly, wholly or in part by hernia, fits, vertigo, somnambulism, or disease in any form, or while the member is affected therewith or thereby, then and in every such case the liability of this company shall be $250 for accidental death or $10 per week for a period not exceeding ten weeks for injuries causing total disability. . . . (7) If the assured shall change his occupation to or be injured in any occupation or exposure or in performing acts classified by this company as more hazardous than that in which the member was classed when accepted, then and in all such cases, the insurance fixed indemnity or weekly indemnity payable shall be only the amount fixed for such increased hazard in accordance with the classification of risks by the company and as per the table on the back hereof. . . . (10) Insurance in this company is not forfeited by a temporary change of occupation; the following table will apply according to the classification of the company in case of accidental injury while engaged temporarily in any occupation classified by the company as more hazardous than that under which this policy is issued. If accidentally injured while engaged in any occupation classed below extra hazardous, the company will pay $100 death benefit or $2.50 weekly indemnity.

Classification. Below Preferred.        Weekly Indemnity.
Ordinary ...................................80%
Medium ...................................60%
Special ...................................40%
Hazardous ...................................20%
Extra hazardous ...................................10%

In his application for insurance, plaintiff stated that his occupation was that of manager of the Hawarden Flour Mill, of which he was proprietor, and that the more hazardous duties connected therewith were office duties and overseeing.

Defendant in its answer pleaded that plaintiff was not engaged in the business stated by him, but in a more hazardous one; that his injuries were such as that he was not entitled to the $25 per week for fifty-two weeks; that his trouble was not due to the accident he received, but to rheumatism; that the action was not commenced within the time provided by the policy; that in no event was plaintiff entitled to more than $100; that in his written application plaintiff stated that no accident company had ever rejected his application or canceled his policy, which was false and untrue; and some other matters not necessary to be mentioned. Upon these issues, the case was tried, resulting in a verdict for plaintiff in the sum of $1,300.

The questions presented by the appeal render it necessary to state some of the facts. The evidence shows that plaintiff, at the time of taking out his insurance, and for some time prior and subsequent thereto, operated a flour mill and was engaged in the manufacture of flour and feed, for a time as part owner and then as owner; that he was night miller, day miller, and then manager. Just prior to the accident his principal work was in the office supervising and waiting on trade and buying wheat. We now quote the following from his testimony:

I did not as a rule attend to the machinery at that time. I think I hired a miller in the winter of 1901 and 1902. Prior to that time I had been able to do, and had done, the work around the mill, rather than overseeing it. I ran the mill for twelve or thirteen years. I did the work of waiting on the trade, and had something to do with the running of the machinery, and did the repairing on the machinery if it needed it. I worked around and supervised. I did a miller's work. Prior to the hiring of a miller in the winter of 1901 and 1902, I had assisted in the work of grinding as well as waiting on customers. After getting the elevator, that needed more attention to take care of that branch of the business, and this miller attended to the grinding, and so on, principally. I looked after the machinery more or less prior to getting the miller. My partner and

myself did that work between us, and I have another man that has been with me fourteen years. My partner was with me until 1898.

Plaintiff gave the following account of the accident which he received:

On the 24th day of July, 1902, I started on my vacation to Manchester, Iowa. I went to see my brother and other relatives. My brother's name is Joseph B. Kenny, and he lived about two miles from Manchester and was in the dairy farming business. I got to my brother's place on the evening of the 25th and was hurt on the 30th. Between those days I visited with my brother, called on the old neighbors, and did some hunting, and on the 30th I went out to mow a piece of grass for my brother at about ten o'clock in the forenoon. My condition of health was good at that time, and I had not been suffering from any disease or trouble. I was in vigorous health and did not have any pains at that time, nor had I any for a long time prior. I had a new six-foot McCormick mower. It had an iron seat, the usual form of all seats on mowing machines. The seat had raised edges all around it, and in the center of the seat there was a raised portion right in front. It was cast iron, with holes or slits in it. The raised rim was perhaps two-thirds of the way around the sides, and it was open in front, except this raised saddle in the center. The edge of the seat in the forepart and sides of this saddle was pretty sharp iron. I hitched on the mower, which had been left on a piece of ground that had already been cut over, not far from the piece I wanted to mow, a twenty-acre field. It was a small point up at the top of the field that had been drained. That drain came down by the fence until it got near the end of the twenty acres, and cut off down across the road, leaving a small three-cornered piece. In order to get over to that three-cornered piece we had to cross this little ditch. It had been a very wet season that year, and usually there was no water in that ditch at that time of the year. But it had been a very wet season, and there was quite a pitch coming down to the ditch. The ditch itself was not very deep, but there was quite a pitch on both sides, rather a sharp pitch. When the horses went down into that they did not see the water as I supposed until they got on that

pitch, and they jumped the ditch, and the mower went into the ditch, and, the horses going pretty rapidly, the outside end of the sickle bar caught on the bank of the ditch, stopping the machine at once. The shock of the sudden stopping of the machine throwed me up off of my seat, and when I came down I struck on the seat; the seat not setting square at the time, and being tilted on account of the position of the mower in the ditch. And I struck across my leg and back, on the front part of the seat. I got on the seat and got out of there and went on and cut the piece of grass. It took me perhaps an hour or an hour and a half. When I drove there I knew there was a ditch, but I had not been there for twenty years, and it had been worn deeper than when I knew it. It was covered and concealed by very rank grass. I was not expecting anything of the kind when the horses jumped. When I finished the mowing I got off the mower. The pain commenced at once when I received the injury and kept on growing worse, gradually increasing. When I had finished the mowing, I walked to the house. There was a wagon there. I endeavored to get into the wagon, but could not, but had to walk to the house, perhaps for a mile. When I got home the pain kept increasing, and I laid down on the lounge. I think I was not undressed until the afternoon. I went to bed shortly after the dinner hour.

Several doctors examined plaintiff after he received his injuries, and they testified, in substance, that he (plaintiff) was suffering from traumatic neuritis due to his striking the seat of the mower; traumatic neuritis being, as we understand it, inflamation of a nerve or nerves due to external injury. These doctors also said that neuritis was something different from rheumatism and readily distinguishable from neuralgia. Some, if not all, of these physicians testified without specifying with much particularity as to what they meant that neuritis was a disease. Plaintiff was injured July 30, 1902, and this suit was commenced January 22, 1904.

Enough has been stated to dispose of many of the questions presented. It is contended that the action was not

commenced in time.   It is provided in the policy that action
thereon should be commenced within six
months next " after disability for which claim
is made either terminates or assumes a fixed
and permanent character."  As plaintiff was totally disabled,
his cause of action did not accrue until July 30, 1903, and
by section 1744 of the Code of 1897 it is provided that the
time within which action is to be brought against an insur-
ance company shall not be limited to less than one year from
the time when a cause of action for the loss accrues.   See,
also, section 1820.   This section applies to such companies
as the defendant, and the action was commenced in time.
*Christie v. Insurance Co.,* 82 Iowa, 360.

1. ACCIDENT
INSURANCE:
limitation
of actions.

II.   Next it is argued that the court was in error in not
stating the issues to the jury.   True, the trial court did not
give a formal statement of the issues, but this is not required
by statute.   Nor is it necessary to a proper
submission of a case that it be given.   It is
enough if the court directs the jury as to the facts necessary
to be found to justify a recovery and states what will defeat
a recovery on the policy.   As to whether or not these mat-
ters were properly presented, we shall have more to say pres-
ently.   As sustaining the main proposition, see *Fannon v.
Robinson,* 10 Iowa, 272; *Jenks v. Lumber Co.,* 97 Iowa,
342; *Gunsel v. McDonnell,* 67 Iowa, 521; *Wells v. Kavan-
agh,* 74 Iowa, 372.

2. INSTRUCTIONS:
statement
of issues.

Coming now to the exact claims made by defendant as
to the omission of the court to state the issues to the jury,
we find that no reference was made to the contract limitation
of time within which suit should be brought.
As the action was timely, the court was fully
justified in not referring to this issue.   It is said that the
court neglected to submit the issue as to whether or not plain-
tiff was engaged in a different occupation and a more hazar-
dous work when he made his application from what he stated
therein, and also failed to give an instruction covering the

3. SUBMISSION
OF ISSUES.

issue as to whether or not plaintiff had been rejected by another company or had had his policy in another company canceled. These issues were tendered by defendant and were not covered by the court in its charge. Whether or not they should have been submitted depends upon the testimony. A careful examination thereof, as disclosed by the record, does not indicate any such misrepresentation as to occupation as would avoid or diminish the company's liability under the policy. As to the cancellation of a policy held by plaintiff in another company, all testimony offered by defendant on that subject was excluded, and there was nothing to submit to a jury. The correctness of the ruling on the testimony will hereinafter be considered. There was no error in refusing to submit these issues.

III. The trial court gave the following, among other, instructions:

Par. 4. The defendant, answering, denies that plaintiff was injured, saying, however, that if he was injured, as stated, and if he was for a term of fifty-two weeks immediately, wholly and continuously disabled, as claimed by him, that said disability was not caused solely by said accident, independent of all other causes, and say that said disability, if any existed, was caused by disease not produced or caused by said accident, namely, the disease of rheumatism. You are instructed that the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the disability of which he complained was not caused by rheumatism, but was caused solely by said accident, independent of all other causes.

4. ACCIDENT INSURANCE: disease.

Par. 6. If you find the plaintiff sustained accidental injury which resulted in disease, and that the plaintiff was wholly disabled by said accident resulting in disease, then your verdict should be for the defendant.

Par. 7. If the evidence fails to show, by a preponderance, what in fact was the cause of the disability for which the plaintiff seeks to recover in this case, then your verdict must be for defendant.

It is argued that under the evidence and these instructions the verdict should have been for defendant; for that the evidence shows without conflict that traumatic neuritis is a disease. It is true that the doctors spoke of traumatic neuritis as a disease, and in a sense this must be so; but it was for the jury to say whether it was such a disease as is referred to in the policy. A " disease " is a malady, affection, sickness, illness, or disorder, and, as used in the policy in suit, it means something different from a wound or hurt producing an injury and immediate functional disturbance. *Martin v. Equitable Acc. Ass'n,* 61 Hun (N. Y.), 467 (16 N. Y. Supp., 279). There was no disease following the injury, at least the jury may have so found, but a personal bodily injury caused by external, violent, and accidental means. Moreover, there was an external mark on the exterior of plaintiff's body visible to the eye. Such being the case, the condition of the policy relied upon by defendant did not apply.

IV. As we have already intimated, there was no error in refusing to submit to the jury the question of misrepresentation in the application as to plaintiff's occupation. He

5. CHANGE IN OCCUPATION.

was engaged in the business he said he was, and his occupation had not changed down to the time of the accident. Moreover, there was a rider attached to defendant's policy which provided that the insurance was not forfeited by a temporary change of occupation. This would be the rule, however, in the absence of such a provision. *Traveller Ass'n v. Kelsey,* 46 Ill. App., 471; *Holiday v. Acc. Ass'n,* 103 Iowa, 178.

V. Several rulings on the admission of testimony are complained of, and of these but two need our attention, as the others were clearly correct. To show that plaintiff had

6. FALSE REPRESENTATIONS: evidence.

held a policy in an accident company which had been canceled at the time he made application for the policy in suit, defendant offered the deposition of one Doverman. His testimony showed that plaintiff had

held a policy in the National Masonic Accident Association which expired December 31, 1900, unless the premium was paid for another year and a new application made upon a new rate. The option of continuing the insurance was with the plaintiff, and he was informed by the secretary of the Masonic Accident Association that if he desired to continue carrying insurance with that company it would be necessary to make a new application upon a new rate, and that if he did not do so his certificate would be discontinued. Surely this was not a cancellation of the certificate or a declination to renew the same. The Masonic Association never did cancel the policy, nor did it decline to renew it. There was no error in the ruling rejecting this deposition.

The other ruling which is challenged relates to testimony tending to show that plaintiff was injured while engaged in acts classified as more hazardous than his occupation at the time of the issuance of the policy. To prove this defendant offered what purported to be a classification of risks adopted by its executive committee. This evidence was rejected, and of this complaint is made. There are two reasons why this ruling was correct. In the first place, when injured plaintiff was not engaged in farming or any other occupation than that stated in his application. The word " occupation " has reference to a vocation, trade, or calling, and not to the performance of acts of exercise, diversion, or recreation. *Union Ass'n v. Frohard,* 134 Ill., 228 (25 N. E., 642, 10 L. R. A., 383, 23 Am. St. Rep., 664); *Holiday v. Ass'n, supra.*

7. SAME.

Moreover, there is no sufficient showing that this classification was ever adopted by any competent body acting on behalf of defendant. In the absence of express authority, the executive committee of defendant's board had no power to make the classification. There is no evidence of any action of defendant's board, and the classification adopted by the executive committee was without authority. *Houdeck v. Insurance Co.,* 102 Iowa,

8. CLASSIFICATION OF RISKS.

303. Aside from this, and as a conclusive answer to defendant's contention, we find in the policy the express provision, above quoted, that the insurance was not to be forfeited by a temporary change of occupation.

Other questions argued need not be discussed, as they are not of sufficient importance to demand separate consideration.

No prejudicial error appears, and the judgment is *affirmed.*