GEORGE TWOHEY, as next friend of GORDON TWOHEY, his minor son, and JAMES GRAVES, as next friend of MICHAEL GRAVES, his minor son, appellees, v. GILBERT C. BROWN, appellant.

No. 48528.

(Reported in 66 N.W.2d 870)

NOVEMBER 16, 1954.

Hall & McCarthy, of Davenport, for appellant.

Filseth & Schroeder and Don A. Petruccelli, all of Davenport, for appellees.

SMITH, J.—The collision between defendant's car, driven by himself, and the motor scooter, operated by plaintiff Gordon Twohey, and upon which plaintiff Michael Graves was a passenger, occurred October 12, 1952, at the intersection of Fourteenth and Warren Streets in Davenport, Iowa. The scooter was traveling east on Fourteenth, defendant north on Warren. There

was a stop sign for travelers coming to the intersection from the south on Warren. Fourteenth is a through street.

The day is described as clear and the pavement as dry. Gordon was thirteen years old, Michael twelve. Defendant concedes that plaintiffs, both being under fourteen years of age, are not chargeable with contributory negligence. Kallansrud v. Libbey, 234 Iowa 700, 703, 13 N.W.2d 684.

The case was tried to a jury. Verdict was for both plaintiffs. Defendant appeals, urging insufficiency of the evidence of negligence. The contention was presented in the lower court by motion to direct verdict made at the close of plaintiffs' case, renewed at the close of all the testimony, and by motion for judgment notwithstanding verdict. All were overruled. Three errors are assigned—each a general statement as to each ruling to the effect that there was no evidence of any negligence of defendant to warrant submission to the jury. There is in fact but one assignment.

Plaintiffs, by their respective next friends, pleaded specific negligence by failure to exercise due care, in four particulars: Failure to keep proper lookout, to have vehicle under proper control, to stop at a stop sign before entering a highway and to look both ways when entering an intersection where a stop sign has been duly posted. So far as the record shows all were submitted without objection.

Defendant argues and cites authorities to support two brief points: "A. A verdict should be directed when as a matter of law the record presents a case about which the minds of reasonable men cannot differ"; and "B. A party may, on motion, have judgment in his favor despite an adverse verdict if the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict."

These propositions are of course indisputable. We have however to determine whether they are applicable to the facts shown by this record. The existence of the stop sign is stipulated. Our duty is considerably simplified by the fact no question of contributory negligence is in the case. And we must, as defendant frankly concedes, view the evidence "in the light most favorable to the plaintiffs."

I. Defendant argues only the insufficiency of evidence as to one specification, defendant's alleged failure to stop before entering the intersection. He contends that although both plaintiffs testified on direct examination defendant did not stop at the stop sign, their cross-examination showed they could not have seen him at that point because cars were parked on the south side of Fourteenth near Warren Street which blocked their view.

Defendant and the occupants of his car testified unequivocally that he did stop. Defendant argues this testimony was undisputed because the testimony of plaintiffs on direct was so weakened by their testimony on cross-examination. But this is not all. Defendant himself testified that when he looked west he "could see 250 or 300 feet, probably." If before or upon entering the intersection he could see that distance, it would seem fair to argue plaintiffs had the same view of his movements. The duty of the jury was to weigh all the evidence.

Plaintiff Michael Graves testified: "I told Gordon a car was coming and Gordon slowed down and the car didn't stop for the sign and then that's all I know." He also said: "I first noticed the approaching car from Warren Street when we got down almost to the corner. * * * The car that I saw which was operated by the defendant didn't stop at the stop sign." Also: "From my position on the scooter I could see the defendant's car approaching up this incline to Fourteenth Street even though there were some parked cars on the south side of Warren Street."

It is true he was asked on cross-examination to make more certain just how close the scooter was to the intersection when he first "noticed the Brown car." The purpose was of course to show his lack of opportunity for observation and the improbability of his direct testimony. He fixed the distance as "about 25 feet away." He says the Brown car was then "about five feet back of the stop sign or about thirty-two feet back of the intersection."

He was then asked: "Now do you mean to tell us * * * that you could always see Mr. Brown's car from a point about thirty-two feet south of the intersection until the collision occurred?" His answer was: "No; but before we come to the cars parked I could see him go past the stop sign." There are more questions and answers in the course of which the witness insisted he saw

defendant "go past that stop sign" and "he just kept on going and stopped in the middle of the street" where the collision occurred.

■ The witness was twelve years old. If there is contradiction in his testimony between what he says he actually saw and his estimates of time and distances it was for the jury to weigh it as a whole, not for us to pass on it as a question of law. It is of course sometimes possible for a witness to make admissions on cross-examination that utterly destroy his direct testimony, but that did not occur here.

■ "The rule making the credibility and the weight of testimony a question for the jury applies notwithstanding there are contradictions or inconsistencies in the testimony of a particular witness, as, for example, * * * where, on cross-examination, * * * his testimony is inconsistent with his original testimony." 64 C.J., Trial, section 343, page 356.

■ II. Other specifications of alleged negligence were in the case. We cannot hold there was no evidence to support any of them. True, defendant says: "Before entering the intersection I made a right-hand observation and then I looked to the left." Of course no one disputed or could dispute this testimony. But the jury could properly consider the circumstances.

He says he first saw the approaching scooter after he entered the intersection when it was still 175 to 200 feet away. "At that time my car was in about the center of the intersection, one third of it could have been north of the center line * * *." On cross-examination he explained: "My view was unobstructed for a considerable distance of better than 200 feet. At the boulevard stop position I saw nothing. I didn't see the boys approaching until I got half way through the intersection. I then made an abrupt stop upon seeing them, approximately 175 to 200 feet away."

■ We are not prepared to say there was no evidence to go to the jury upon any of the specifications. It is our duty to view it "in the light most favorable to the plaintiffs", not to weigh it for the purpose of determining its preponderance. There was sufficient to go to the jury and the decision of the trial court in that respect is therefore—Affirmed.

All JUSTICES concur.