LUKE YOUNGWIRTH, as natural parent of minor, Thomas Young-wirth, deceased, appellant, v. STATE FARM MUTUAL AUTO-MOBILE INSURANCE COMPANY, appellee.

No. 51970.

(Reported in 140 N.W.2d 881)

March 8, 1966.

Winkel & Winkel, of Algona, for appellant.

Erwin L. Buck, of Britt, for appellee.

RAWLINGS, J.—Plaintiff brought an action at law against defendant seeking recovery of funeral expenses and death benefits under an automobile policy of insurance issued by defendant to Thomas Youngwirth, deceased.

By his petition plaintiff alleged the insured died Sunday, October 6, 1963, as a direct result and independent of other causes, from bodily injuries sustained while occupying a land motor vehicle, and that defendant had issued a policy of insurance in effect at time of insured's death which provided for payment of $1000 funeral expense and $10,000 on death of insured resulting from injuries sustained while operating or being struck by an automobile.

Defendant answered admitting death of insured and issuance of a policy of insurance to him, but denied liability.

As a complete defense defendant alleged the exclusionary provisions of the policy accorded it complete immunity from liability under the circumstances attending death of the insured.

Plaintiff replied and defendant then moved to strike a portion of the allegations contained in the reply. This motion was sustained in part by the trial court.

Later defendant submitted a written offer to confess judgment for $1000 and costs.

There was trial to a jury. At close of all evidence for plaintiff and defendant, the latter moved for a directed verdict as to plaintiff's claim for death benefits. This motion was sustained.

The jury, by direction of the court, then returned a verdict awarding $1000 funeral expense to plaintiff and he appeals.

I. This is an action at law reviewable by us only on assigned errors. Rule 344(a)(3), Rules of Civil Procedure.

Despite the fact plaintiff has prefaced his brief by questions presented on appeal, we shall consider them as assigned

errors. Kirchoff v. Humboldt Com. Sch. Dist., 253 Iowa 756, 757, 113 N.W.2d 706, and Potter v. Robinson, 233 Iowa 479, 481, 9 N.W.2d 457.

II. Of course, all testimony must be here viewed in a light most favorable to plaintiff since this case comes to us for review from a verdict directed for defendant. Rule 344(f)(2), R. C. P., and Davis v. Coats Co., 255 Iowa 13, 18, 119 N.W.2d 198.

III. The automobile policy issued to insured was in effect October 6, 1963, the owned vehicle being a 1956 Ford.

Among other things Coverage S under Insuring Agreement IV provides as follows:

"COVERAGE S

"*Division 1—Death Indemnity.* To pay the principal sum stated as applicable in the exceptions of the declarations in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, * * *."

Following this, on the next page of the policy, are "Definitions—Insuring Agreement IV" not here relevant.

Immediately thereafter, under "Exclusions — Insuring Agreement IV", the policy provides in part:

"*Insuring Agreement IV does not apply:*

"(a) to bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance, commercial automobile, ambulance, fire truck, police car or other emergency vehicle, * * *."

The trial court held the exclusionary clause above set forth is clear and understandable. Plaintiff contends it is ambiguous.

■ No authority need be cited to support the rule that an insurance policy prepared by the insurer must be liberally construed in favor of the insured, and if any relevant provision is ambiguous it is to be weighed in favor of the latter.

■ However, a policy is a written contract and its terms are to be accorded a reasonable construction. Ambiguity created by giving a strained or unnatural meaning to words or phrases or by mere casuistry does not constitute genuine doubt.

Actually, there are few expressions used by mankind which cannot be given a twisted meaning from that meant in the ordinary sense.

In Langlas v. Iowa Life Ins. Co., 245 Iowa 713, 715, 716, 63 N.W.2d 885, 887, we stated as follows:

"It is elementary that in interpreting written contracts the courts' primary search is for the intent of the parties. Sands v. Iowa Mutual Insurance Co. of De Witt, 244 Iowa 16, 19, 55 N.W.2d 572; Iowa Electric Co. v. Home Insurance Co., 235 Iowa 672, 17 N.W.2d 414.

"The principle that when the terms of an insurance contract are ambiguous, equivocal, or uncertain so that the intention of the parties cannot be clearly ascertained by the ordinary rules of construction, the doubtful points are to be construed strictly against the insurer and liberally in favor of the insured, is equally well settled. Brush v. Washington National Ins. Co., 230 Iowa 872, 876, 299 N.W. 403, 405; Boles v. Royal Union Life Ins. Co., 219 Iowa 178, 187, 257 N.W. 386, 390, 96 A. L. R. 1400, and cases cited. This rule is, of course, of importance only if the contract be ambiguous. It is then of much aid in determining the intent of the parties, the final end and aim of all construction and interpretation of contracts.

"A second principle auxiliary to the determination of intent is that the language of insurance contracts must be given its common and ordinary meaning and must be construed as popularly understood. We have said: '* * * the words, terms, and provisions of insurance contracts, and particularly clauses limiting or excluding liability on the policy, must be given a practical, reasonable and fair interpretation. * * * Such words must be given their plain, ordinary, and popular meaning and not peculiar or technical meanings.' Eggena v. New York Life Ins. Co., 236 Iowa 262, 265, 18 N.W.2d 530, 531. See also King v. Equitable Life Assur. Soc. of the United States, 232 Iowa 541, 542, 5 N.W.2d 845, 155 A. L. R. 1022; Lamar v. Iowa State Traveling Men's Assn., 216 Iowa 371, 373, 249 N.W. 149, 92 A. L. R. 159; Stankus v. New York Life Ins. Co., 312 Mass. 366, 368, 44 N.E.2d 687, 688."

Then this court said in Wilson v. State Farm Mutual

Automobile Ins. Co., 256 Iowa 844, 847, 128 N.W.2d 218, 220: "An instrument is deemed to be ambiguous when the language thereof is capable of being *reasonably* understood in either of two or more possible senses. As said in Pederson v. Bring, 254 Iowa 288, 117 N.W.2d 509, an ambiguity exists when a *genuine doubt* appears as to the meaning of the contract. It is the general rule that where insurance contracts are ambiguous or require interpretation, or are fairly susceptible of two different constructions, the courts will adopt that construction most favorable to the insured. In other words, the courts will give that construction to an accident policy, if the language fairly admits, as will make it of value and carry out the intention expressed therein, that liability is incurred where death occurs from an accidental injury." (Emphasis supplied.)

In approaching the problem at hand, plaintiff lifts words out of context, then laboriously attempts to give to each some meaning or meanings other than that commonly applied to them. See in this connection 44 C. J. S., Insurance, section 293, page 1154, and 29 Am. Jur., Insurance, section 252, page 635.

Plaintiff contends Wilson v. State Farm Mutual Automobile Ins. Co., supra, supports his stand.

However, that case is neither factually in point nor here persuasive. There the insured was killed while running alongside a runaway truck in an effort to stop it. The truck overturned and fell on the insured causing his death. The issue presented was whether death resulted from *operation* of a commercial vehicle. This was the point of uncertainty under the facts of that case.

IV. It thus becomes apparent ambiguity in an insurance policy is usually a relative term. A single provision in such a policy may be ambiguous under one given factual situation, but clear and certain when applied to an entirely different set of facts.

Viewed in the light of the evidence presented in the case now before us, the exclusionary clause of the subject policy states as follows: "Insuring Agreement IV does not apply: (a) to bodily injury sustained in the course of his occupation by any person

while engaged (1) in duties incident to the operation, * * * of, * * * a commercial automobile, * * *."

We find no genuine doubt as to the meaning of this contract provision as it applies to the case here at hand.

Incidentally, plaintiff contends the word "commercial" is defined under "Declarations" on page 10 of the policy. But this part of the instrument is nothing more nor less than an exception provision and a continuation of page 1 which relates, where applicable, to the owned or insured vehicle.

In that connection we are satisfied the term "commercial automobile" means any self-propelled motor vehicle designed for use principally upon public roads in the transportation of people or property for hire. 15 C. J. S., page 577.

Unquestionably the vehicle being operated by insured at time of his death was a two-ton tandem truck carrying an 18-foot steel dump box with a 478-bushel capacity operating with a 16-ton license permitting a 40,000-pound load, ordinarily used to haul grain for others for hire.

And the word "occupation" as used in the subject policy can hardly be said to be ambiguous. It is a relative term in common use with a well understood meaning, but broad in its scope and significance. It encompasses the incidental as well as the main requirements of the vocation, calling or business of a person. It is the field or fields of endeavor which a man or woman follows in order to procure a living or obtain wealth, and a person may engage in more than one occupation at anytime. The term is commonly applicable to that field of work in which one is regularly, ordinarily and usually engaged. Generally it does not embrace an isolated, temporary or semioccasional adventure in some other line of human endeavor. Mortensen v. Central Life Assur. Assn., 124 Iowa 277, 279, 99 N.W. 1059; Kenny v. Bankers' Acc. Ins. Co., 136 Iowa 140, 149, 113 N.W. 566; State ex rel. Associated Master Barbers, etc. v. Eischen, 251 Minn. 36, 86 N.W.2d 652; Bowen v. Merchants Mut. Cas. Co., 99 N. H. 107, 107 A.2d 379, 385; Farmers Auto. Inter-Ins. Exch. v. Calkins, 39 Cal. App.2d 390, 103 P.2d 230, 232; and 67 C. J. S., page 74.

And, as applied to the occupation of a person employed by another, "in the course of" refers to time, place and circum-

stances. It means during and while a person may be performing the duties of the occupation for which he or she is employed, or something incident thereto. Sister Mary Benedict v. St. Mary's Corp., 255 Iowa 847, 853, 124 N.W.2d 548; Casey v. Hansen, 238 Iowa 62, 64, 26 N.W.2d 50; and National Charity League, Inc. v. County of Los Angeles, 164 Cal. App.2d 241, 330 P.2d 666, 669.

We are satisfied these definitions give to the subject word or words their reasonable, ordinary and commonly accepted meaning.

 V. While no jury issue was presented as to the meaning of the exclusionary clause of the policy, it still remains a fact issue was presented for determination by the jury.

The trial court concluded as a matter of law, "the insured was engaged in duties incident to the operation of a commercial automobile at time of his death". This may or may not be true, but it is only part of the issue created by the pleadings and the evidence.

We are satisfied a fact issue was presented as to whether, at the time concerned, insured was "in the course of his occupation". The testimony on this point was clearly in conflict and not subject to determination as a matter of law.

The evidence discloses Mike Vitzhum, one of the owners of the truck involved, signed a statement immediately after the accident, which was received in evidence without objection, stating in part as follows: "We hired Thomas Youngwirth, age 18, who is our nephew, to drive our truck to haul the soybeans. We had agreed to pay him one cent a bushel for hauling." The witness subjected this statement to some dispute during trial of the case, but the contradiction did not serve to obliterate the statement. In fact it simply went to the weight and credibility to be accorded the testimony of this witness.

In Twohey v. Brown, 246 Iowa 114, 118, 66 N.W.2d 870, we said: " 'The rule making the credibility and the weight of testimony a question for the jury applies notwithstanding there are contradictions or inconsistencies in the testimony of a particular witness, * * *'."

There is also testimony to the effect the insured worked reg-

ularly for a grain elevator company at Wesley, Iowa, from 7 a.m. to 6 p.m. Monday through Saturday of each week; the job did not entail Sunday work; insured was killed on a Sunday while hauling beans from his employer's elevator to a plant in Mason City, in a truck which belonged to Vitzhum Brothers; that the Vitzhums were independent contractors and occasionally hauled grain for the insured's regular employer; the Vitzhums never hired anyone to haul grain for them; that Mike Vitzhum told the insured not to use the subject truck to haul on Sunday; and the insured had, in the past, worked for the Vitzhums without pay.

There is other conflicting evidence which also tends to support a jury issue.

In Mass v. Mesic, 256 Iowa 252, 254, 127 N.W.2d 99, this court stated as follows: "It is not the province of the court to pass upon the weight or credibility of the testimony and where there is a substantial dispute in the testimony or where from the testimony, though undisputed, reasonable minds might differ, the same calls for a jury determination. The question arising in such cases, as here, is whether the facts present such substance or reasonable possibility."

In this connection see also rule 344(f) (17), R. C. P., and McClenahan v. Des Moines Transit Co., 257 Iowa 293, 296, 132 N.W.2d 471, 473.

Defendant's motion for a directed verdict should have been overruled.

VI. We come now to plaintiff's claim of error on the part of the trial court in striking a portion of paragraph 6 of plaintiff's reply.

By the contested allegation plaintiff legally concluded clause 6 on page 10 of the subject policy defining "commercial" applied to exclusions under Insuring Agreement IV.

We have already determined this conclusion is without merit.

There was no prejudicial error on the part of the trial court in striking the challenged statement from plaintiff's reply.

VII. The trial court erred in sustaining defendant's motion

for a directed verdict. This case must therefore be reversed and remanded for new trial.—Reversed and remanded.

All Justices concur except Thornton and Stuart, JJ., who concur in the result.