Myrtle BAUERLE, Plaintiff and Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOM-INGTON, ILLINOIS, a corporation, Defendant and Appellant.

Civ. No. 8315.

Supreme Court of North Dakota.

Sept. 20, 1967.

Melvin Christianson, of Foughty & Christianson, Devils Lake, for plaintiff and respondent.

Mart R. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and appellant.

CLIFFORD JANSONIUS, District Judge.

This matter comes before the Court on a stipulation of facts and evidence contained in several depositions. The facts, while rather complex, are only in dispute so far as the use of the truck is concerned and whether or not it should be defined as a "commercial automobile" and within the exclusionary provisions of an insurance policy. At the time of the accident resulting in the death of plaintiff's husband, it is admitted that the decedent was returning home after hauling a load of grain from decedent's farm to the elevator.

After the first decision of the trial court, the case was reopened and the evidence of Duane Bauerle and John Bauerle was taken by deposition. This was directed to the use made of the vehicle, which avowedly was a truck equipped with a hoist, and suitable for the general farm purposes of the deceased.

It is admitted that there were other vehicles on the farm which were passenger automobiles, but if a recovery is to be had, it would have to be under the policy covering a 1956 four-door Ford automobile, the policy being Exhibit A attached to the amended answer, and it being the only policy providing death benefits.

The insurance policy provides in part as follows:

"INSURING AGREEMENT IV—AUTO-MOBILE DEATH INDEMNITY, SPE-CIFIC DISABILITY AND TOTAL DISABILITY INSURANCE COVER-AGES

Division 1—Death Indemnity. To pay the principal sum ($5,000.00) stated as applicable in the exceptions of the declarations in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided the death shall occur within 90 days from the date of such accident."

Said insurance policy further provided in part, as follows:

"EXCLUSIONS—INSURING AGREE-MENT IV

Insuring Agreement IV does not apply:

(a) to bodily injury sustained in the course of his occupation by any person while engaged

(1) in duties incident to the operation, loading or unloading of, or as an assistant on, a public or livery conveyance, commercial automobile, ambulance, fire truck, police car or other emergency vehicle, or

(2) in duties incident to the repair or servicing of automobiles;"

That said insurance policy further provided as follows:

"DECLARATIONS (continued from page 1)

1. —5 * * *

6. The purposes for which the owned automobile is to be used are 'pleasure and business' unless otherwise stated in the exceptions.

(a) the term 'pleasure and business' is defined as personal, pleasure, family and business use.

(b) The term 'commercial' or 'commercial-farm' is defined as use principally in the business occupation of the named insured as stated in the exceptions, including occasional use for personal, pleasure, family and other business purposes."

The policy on the truck operated by the decedent states on its face the use to which the vehicle was to be put and the business of the insured as follows: "Use in commercial farm, occupation farmer".

It is therefore obvious that the parties were aware of the fact that the truck was one being used commercially.

The issue in this case is whether or not the exclusionary provisions of the policy will preclude recovery by the plaintiff and becomes involved because of the fact that there is no dispute in regard to the following:

1. The decedent was returning from hauling a commercial farm load to the elevator;

2. The vehicle in which decedent was riding at the time of his death was insured under a policy for "use, commercial farm; occupation, farmer".

3. The vehicle was equipped with a commercial hoist which is something that could only be used in transporting a commodity as distinguished from special equipment used to transport persons.

4. The vehicle was used by the decedent and his children at times in getting the mail, visiting friends and neighbors, and non-economic personal activities.

In the case of St. Paul Fire and Marine Insurance Company v. Kell, 231 Ark. 193, 328 S.W.2d 510, the policy was similar to the one involved in this case, insofar as using the phrase "use principally in the business occupation of the named insured". The Court in this case, however, was confronted with a different set of facts:

"It is undisputed that at the time this accident occurred appellee was using the vehicle for transportation to the job site the same as he would a private automobile, and was not using the truck to perform any duties incident to his occupation."

This case also differs from the cases reported because the deceased was covered by two policies written by the same company on separate vehicles and is further confused by the fact that while he was operating the truck when killed, the claim is made under the provisions of his automobile policy, the truck policy containing no death benefits.

Policy No. 436 154–B30–34 was on the Ford 1948 and box, which is the truck, and the use is set out as "commercial farm, occupation farmer".

Both of the policies appear to be identical except for the death benefits provided by the car policy.

Subsection (a) of the exclusions under insuring agreement 4 of both policies reads as follows:

"To bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incidental to the operation, loading, or unloading of * * * commercial automobile."

Under the stipulated facts it is agreed that the decedent, Richard Bauerle, was an insured individual under Policy 453 964–F22–34. Under coverage S, insuring agreement 4, insured was covered for the sum of $5,000 in the event of death by accident sustained by him while occupying, or through being struck by an automobile. Insuring agreement 4 does not apply.

"(a) to bodily injury sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation, loading or unloading of * * * commercial automobile".

Item 6 of the policy declarations is as follows:

"The purposes for which the owned automobile is to be used are 'pleasure and business' unless otherwise stated in the exceptions. (a) the term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) the term 'commercial' or 'commercial-farm' is defined as use principally in the business occupation of the named insured as stated in the exceptions, including occasional use for personal, pleasure, family and other business purposes."

The issue resolves itself down to whether or not the 1948 Ford one and a half ton truck belonging to the deceased, Richard W. Bauerle, was a commercial automobile within the meaning of Policy No. 453 964–F22–34 excluding coverage for death sustained by any person while engaged in duties incident to the operation of a commercial automobile.

■ A review of the cases indicates that the prevailing rule governing the construction of contracts of insurance is that where a provision of the contract is susceptible to two equally reasonable constructions, one favorable to the insurer, and the other to the insured, the latter will be followed.

St. Paul Fire and Marine Insurance Co. v. Kell, 231 Ark. 193, 328 S.W.2d 510.

■ In the case of Schmitt v. Paramount Fire Insurance Company, 92 N.W.2d 177, this Court stated:

"An insurance contract, like any other contract, is to be construed according to the sense or meaning of the words that are used in the contract. 44 C.J.S. Insurance § 294, p. 1155. While the language of the contract should not be strained in order to impose liability upon the insurer, nevertheless, where it is reasonable to do so, the contract should be construed liberally to accomplish the purpose of the contract; that is, to provide indemnity. 44 C.J.S. Insurance § 297, p. 1165. Thus if the language used, reasonably raises a doubt as to its meaning, that doubt will be resolved against the insurer who wrote the contract."

Conklin v. North American Life and Casualty Company (N.D.), 88 N.W.2d 825; Persellin v. State Auto Insurance Association, 75 N.D. 716, 32 N.W.2d 644; Beauchamp v. Retail Merchants Association, 38 N.D. 483, 165 N.W. 545.

The stipulation of facts contained some interesting language which for the purpose of this action we must take literally.

"The decedent, Richard W. Bauerle, was also the owner of a 1948 Ford one and a half ton truck. He used this vehicle for the general purposes of carrying out his farming occupation including, but not exclusively so, the hauling of bulk commodities such as grain raised on the land he farmed."

As previously stated, it was this truck that was being used at the time of his death, and this policy did not include death benefits. The action was brought on the car policy.

The policy on the truck, which is in evidence, was issued on the basis that it would cover a vehicle used on a "commercial farm", and when the two policies are read in the light of the use for which this truck was insured, it precludes any need for a strained construction on the word "commercial".

The trial court found that the policy was ambiguous and that the ambiguity must be construed against the insurer to the end that such contract will be given a construction which the decedent believed he had. This question is well answered in the case of Brinkmann v. Liberty Mutual Fire Insur-

ance Company, Cal.App., 41 Cal.Rptr. 526 in which they state:

> "Therefore, as indicated, the determinative issue in this case may be restated as follows: whether the otherwise effective exclusionary clause of this policy was rendered inapplicable by reason of the fact that the deceased was permitted to park the commercial vehicle overnight at his residence rather than being required to return it to the company's premises."

> "Certainly, if the insured had been returning the truck to a parking lot owned by the company because he, the employee, 'had finished his duties for the day,' no sensible claim could possibly have been asserted that such operation of this vehicle was not within the operation of the exclusionary clause, regardless of whether or not the employee had completed the performance of his duties with regard to his pick-ups and deliveries in accordance with the instructions of his employer. Is this inescapable result changed by reason of the fact that, in accordance with his employer's policy, his required operation of the truck for the day was advantageously to be terminated at his home rather than at the parking lot of the employer?"

No one has contended that this was not a commercial farm, or that the decedent was not pursuing his occupation as a farmer at the time of his death, and the evidence introduced was only for the purpose of showing that the vehicle was sometimes used for pleasure. When viewed in the light of the purpose for which the truck was acquired, it becomes obvious that the principal purpose of having the truck was to serve a commercial need, to wit: on a commercial farm by a person whose occupation was that of a farmer. Since the truck was acquired for use on a "commercial farm", by the decedent who listed his occupation as a "farmer", there can be no doubt that the vehicle was a commercial vehicle under the exclusionary terms of the automobile policy which is involved here.

In a case almost exactly in point, Youngwirth v. State Farm Mutual Auto Ins. Co., 140 N.W.2d 881, the Iowa Court said:

> "And the word 'occupation' as used in the subject policy can hardly be said to be ambiguous. It is a relative term in common use with a well understood meaning, but broad in its scope and significance. It encompasses the incidental as well as the main requirements of the vocation, calling or business of a person. It is the field or fields of endeavor which a man or woman follows in order to procure a living or obtain wealth, and a person may engage in more than one occupation at any time. The term is commonly applicable to that field of work in which one is regularly, ordinarily and usually engaged. Generally, it does not embrace an isolated, temporary or semi-occasional adventure in some other line of human endeavor. Mortensen v. Central Life Assur. Ass'n, 124 Iowa 277, 279, 99 N.W. 1059; Kenny v. Bankers' Acc. Ins. Co., 136 Iowa 140, 149, 113 N.W. 566; State ex rel. Associated Master Barbers, etc. v. Eischen, 251 Minn. 36, 86 N.W.2d 652; Bowen v. Merchants Mut. Cas. Co., 99 N.H. 107, 107 A.2d 379, 385; Farmers Auto. Inter-Ins. Exch. v. Calkins, 39 Cal.App.2d 390, 103 P.2d 230, 232; and 67 C.J.S., page 74."

The 1956 Ford four-door automobile covered by the policy under which this action is brought was strictly a passenger car. The truck in which the decedent lost his life was a one and a half ton truck equipped with a box for hauling grain and supplies, and a hydraulic hoist, together with a power take-off. There can be no question but what the primary use of the truck was that of a vehicle used principally for commercial purposes incident to a commercial farm, as defined in the declarations, by a person who was by occupation a farmer.

■ The Supreme Court of North Carolina in the case of Kirk v. Nationwide

Mutual Insurance Company, 254 N.C. 651, 119 S.E.2d 645 stated:

"The test is the character of the use of the vehicle taken into consideration with the form of the car." Zabriskie v. Law, 1922, 118 Misc. 471, 194 N.Y.S. 626, 628. "An automobile truck is a vehicle for the conveyance for commercial purposes over ordinary roads, and the average type of that kind of vehicle is especially designed both in its propelling mechanism and in its body construction for that function." American La France Fire Engine Co., Inc. v. Riordan, 2 Cir., 1925, 6 F.2d 964, 966. "The words 'commercial use' connote use in a business in which one is engaged for profit." Lintern v. Zentz, 1950, 327 Mich. 595, 42 N.W.2d 753, 756, 18 A.L.R.2d 713. "In State v. D., L. & W. R. Co., 30 N.J.Law 473, it was held: 'By the term "commerce", is meant not traffic only, but every species of commercial intercourse, every communication by land or by water, foreign or domestic, external and internal.' * * * transportation is as much a part of commerce as are the goods transported." Conecuh County v. Simmons, 1922, 19 Ala.App. 65, 95 So. 488, 489.

The two policies, the one on which this action is brought, and the policy covering the truck, involved the same insured and the same insurer, and are part of the record before the Court and were in effect during the same period of time.

 A contract should be viewed in the light of the circumstances and conditions prevailing at the time it was executed. Kern v. Kelner, 77 N.D. 948, 48 N.W.2d 90.

While the evidence indicates that the truck was at times used for purposes other than the transportation of commodities, there can be no question but what it was primarily adapted to commercial purposes, and its incidental use for pleasure and noneconomic purposes, would not change its character. The use to which it was put at the time the cause of action arose, is strong indication of its principal use.

We hold that the vehicle in which the decedent was killed was a commercial vehicle and excluded under the terms of the automobile policy; that it was principally used as a commercial vehicle and respondent cannot recover under the policy in issue.

Judgment is reversed and plaintiff's cause of action dismissed.

STRUTZ, C. J., and TEIGEN and KNUDSON, JJ., concur.

ERICKSTAD, J., deeming himself disqualified, did not participate; Honorable CLIFFORD JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.